J-S14005-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID ERKERT, | : | |
| | : | |
| Appellant | : | No. 2143 EDA 2013 |

Appeal from the PCRA Order June 26, 2013,
Court of Common Pleas, Delaware County,
Criminal Division at No. CP-23-CR-0000790-2004

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID ERKERT, | : | |
| | : | |
| Appellant | : | No. 2144 EDA 2013 |

Appeal from the PCRA Order June 26, 2013,
Court of Common Pleas, Delaware County,
Criminal Division at No. CP-23-CR-0000791-2004

BEFORE:  DONOHUE, OLSON and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED MARCH 11, 2015**

David Erkert ("Erkert") appeals from the order of court dismissing his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA").  Following our review, we affirm.

The PCRA court summarized the facts underlying this appeal as follows:

[D]uring the summer of 2003, sixteen-year-old [W.M.] along with his brother and his brother's girlfriend, went to the home of [Erkert] to consume alcohol . [N.T. 3/22/06 at 19-21]. During that night, [W.M.] woke up to find [Erkert] on top of him performing oral sex. [N.7. 3/22/06 at 211.] When [W.M.] told [Erkert] to get off of him, [Erkert] refused and threatened to hurt him if [W.M.] did not calm down. [N.T. 3/22/06 at 22-23]. [Erkert] then drove [W.M.] home and told him that if he told anyone what happened, [Erkert] would "kick his ass" and tell everyone that he was a "faggot." [N.T. 3/22/06 at 25]. This was one of three incidents where [Erkert] forced oral sex upon [W.M.] and threatened him. [N.T. 3/22/06 at 26, 28].

On February 5, 2004, [Erkert] waited in [W.M.'s] home driveway, grabbed [him], tried to force him to go with him, and punched him when he refused. [N.T. 3/22/06 at 32]. [W.M.] continued to refuse to go with [Erkert], ran into his house, and realized that "it wasn't going to stop ever." [N.T., 3/22/06 at 32; 34]. [W.M.] subsequently told his father, Mark [], that [Erkert] had previously molested him and Mark [] immediately notified the police. [N.T. 3/22/06 at 34]. [W.M.] provided a statement that evening to Detective Beese of the Upper Darby Township Police Department. [N.T. 3/22/06 at 34, 90].

On February 17, 2004, at around midnight, [W.M.] and his father were both in the father's bedroom; [W.M.] was watching television and his father was sleeping. [N.T. 3/22/06 at 42]. [W.M.] heard noises downstairs followed by the sound of someone coming up the stairs. [N.T. 3/22/06 at 42, 54]. [W.M.] opened the door, looked out into the hallway, and saw [Erkert] standing in the hall holding a machete. [N.T. 3/22/06 at 42]. [W.M.] yelled to his father that [] Erkert was in the house, dialed 911, and then locked himself in his bedroom closet. [N.T. 3/22/06 at 42, 44].

Mark [] immediately woke up and approached [Erkert] in the hallway. [N.T. 3/22/36 at 591]. [Erkert] told Mark that he was going to "chop his fucking head off" and began swinging the machete. [N.T. 3/22/06 at 59]. The machete struck Mark on the right arm, causing profuse bleeding. [N.T. 3/22/06 at 59]. Mark ran into his bedroom and grabbed a knife for protection. [N.T. 3/22/06 at 61]. Subsequently, Mark and [Erkert] engaged in a struggle and fell down the stairs. [N.T. 3/22/06 at 61]. Mark jumped on top of [Erkert] and held him down until the police arrived. [N.T. 3/22/05 at 62]. After the incident, [Erkert] was taken into custody and taken to the Delaware County Memorial Hospital. [N.T. 3/22/06 at 126].

[Erkert] was jointly represented at trial in March, 2006, by Joseph Ratasiewicz, Esquire, Nicholas Casamento, Esquire, and Thomas Dryer, Esquire. There are several instances from the trial that are relevant to this petition, the recitation of which follows.

During voir dire on March 22, 2006, the trial [c]ourt questioned juror 413, Ruth Kohler, about her relationship with Detective Beese. [N.T. 3/22/06 at 8]. Kohler testified that she knew Detective Beese, that she named her cat after him because she "liked his name," and that when she was a child she had an "affectionate relationship with him." [N.T. 3/22/06 at 9-11]. She additionally testified that her relationship with Detective Beese would not affect her ability to serve [as] a fair and impartial juror. [N.T. 3/22/06 at 11]. Kohler was assigned as an alternate juror, and when one juror failed to appear, was made an active juror. [N.T. 2/12/13 at 61].

Contending that the relationship between himself and [W.M.] was consensual, [Erkert] wanted to testify as to the IDSI charge but not the [a]ttempted [m]urder charge. [N.T. 2/12/13 at 51-2]. After the cases were consolidated, there was some confusion as to whether the scope of cross examination could

be limited to the IDSI charge. [N.T. 3/23/06 at 160-65]. Defense counsel explained to [Erkert] that while both cases were to be considered separately, some facts relating to the [a]ttempted [m]urder charge would be relevant to the IDSI charge and [Erkert] could be questioned about them. [N.T. 3/23/05 at 171-72]. Trial counsel therefore advised [Erkert] that it would not be in his best interest to testify. [N.T. 2/12/13 at 54].

\*\*\*

At the conclusion of the trial, [Erkert] discharged Ratasiewicz, Casamento and Dryer and hired Mr. Malloy, Esquire, to handle his appeal. On January 22, 2007, trial Court received post-sentence motions from both Mr. Ratasiewicz and Mr. Malloy. The [c]ourt attempted several times, with no success, to contact both Mr. Ratasiewicz and Mr. Molloy [sic] to determine the correct counsel for [Erkert]. On May 22, 2007, the trial [c]ourt denied both post-sentence motions without a hearing. A direct appeal to the Pennsylvania Superior Court resulted in the judgments of sentence being affirmed by memorandum opinion and judgment order dated July 9, 2009. … No petition seeking [a]llowance of [a]ppeal was filed with the Pennsylvania Supreme Court.

On May 26, 2010, [Erkert] filed a pro se motion for [p]ost [c]ollateral [r]elief [sic]. [Erkert] was assisted by Henry DiBenedetto Forrest, Esquire. On April 13, 2012, [Erkert] filed an amended [PCRA] [p]etition alleging that his trial counsel, Joseph Ratasiewicz, Esquire, Nicholas Casamento, Esquire, and Thomas Dryer, Esquire, provided ineffective assistance of counsel during his original trial. The PCRA court held a hearing on February 12, 2013. The PCRA court found that [Erkert] was unable to meet the standard for ineffective assistance of counsel under **Strickland** because there was no arguable merit to his claims. That dismissal is the subject of this appeal.

J-S14005-15

PCRA Court Opinion, 4/11/14, at 1-5.

We begin with our standard of review:

> In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record. However, this Court reviews the PCRA court's legal conclusions de novo.

*Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (internal citations omitted).

In each of the three issues Erkert raises, he argues that the PCRA court erred in rejecting distinct claims of ineffective assistance of counsel Erkert's Brief at 4. To successfully establish a claim of ineffective assistance of counsel, a PCRA petitioner must establish that (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered prejudice as a result. *Commonwealth v. Burno*, 94 A.3d 956, 972 (Pa. 2014). In this context, prejudice means a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

- 5 -

Erkert first claims that trial counsel was ineffective for failing to "accurately advise [him] as to the scope of his potential cross-examination if he exercised his … right to testify at his consolidated trials, which … substantially compelled [Erkert] to waive his right to testify in both cases." Erkert's Brief at 12. The thrust of Erkert's claim is that he wanted to testify only that his sexual relationship with W.M. was consensual, but was confused as to whether the Commonwealth would be able to cross-examine him on some facts relating to the homicide case. *Id.* at 14. Erkert argues that this confusion became clear at the time the trial court was conducting his colloquy regarding his right to testify, and that trial counsel was ineffective for failing to further discuss this matter with him so that he could make an informed decision. *Id.* at 14-15.

The record comports with Erkert's account insofar as it reveals that when conducting the colloquy to determine whether Erkert desired to testify, Erkert initially expressed his confusion as to whether the Commonwealth would be able to question him with regard to facts relating to the homicide case. N.T., 3/23/06, at 159-60. However, later in the proceeding, this exchange occurred:

> [Commonwealth]: [B]ased on the statements of [Erkert] today, the Commonwealth has a concern that [Erkert] believes he would be allowed to testify, limit the scope, and the Commonwealth would not be able to ask him about other events that occurred. And I don't think that's absolutely true. I think there are

certain times where I may be able to question him about other events, which he did not testify to on direct. And my concern is that he doesn't quite understand that.

[Counsel]: Do you understand –

[Trial Court]: Counsel, have you –

[Counsel]: Yeah, we've told him.

[Erkert]: Yes. My lawyers have explained that to me. I understand it.

*Id.* at 171-72. Furthermore, at the PCRA hearing, Erkert's lead counsel, Attorney Ratasiewicz, testified that he and his co-counsel discussed the possibility of testifying, as well as the potential scope of cross-examination he could face, with Erkert prior to trial and during trial. N.T., 2/12/13, at 51-52. Attorney Casamento, also testified that he discussed the possible scope of the Commonwealth's cross-examination with Erkert. *Id.* at 107-08.

The sum of this testimony supports the conclusions that (1) Erkert understood the possible scope of cross-examination he would face if he were to testify and (2) that his counsel discussed this matter with him on multiple occasions. Thus, the evidence supports the PCRA court's determination that there is no merit to Erkert's underlying claim, and so we will not disturb the PCRA court's ruling.[1]

---

[1] Erkert testified that he only stated that he understood the issue regarding cross-examination "to get on with it[.]" N.T., 2/12/13, at 18. The PCRA court evidently rejected this testimony and found the testimony of Erkert's counsel credible, as it was empowered to do. *See Commonwealth v.*

Next, Erkert argues that trial counsel was ineffective for failing to strike a juror whose family was friendly with Detective Donald Beese. Erkert argues that "[t]he failure of counsel to eliminate said juror from the jury pool constitutes ineffective assistance, denying [Erkert] the right to a fair and impartial jury." Erkert's Brief at 15. Erkert contends that he was never "fully advised of the length and extent" of the juror's relationship with Detective Beese, and that this juror's "inherent bias speaks for itself." *Id.* at 17.

The record reveals that during voir dire, the juror stated that Detective Beese is close to her family, her mother in particular, and that she named her cat "Donnie," which is Detective Beese's first name. N.T., 3/20/06, at 330-31. She clarified that Detective Beese used to coach softball with her mother and that it has been at least a decade since she saw him regularly. N.T., 3/22/06, at 9-10. Regarding her cat, she testified that she did not name her cat after Detective Beese because she "is obsessed with him or in love with him or anything. I thought it was a cute name for my cat." *Id.* at 10. She stated that knowing Detective Beese would not affect her ability to be impartial. *Id.* at 11. Attorney Casamento testified that he discussed this jurors' familiarity with Detective Beese with Erkert. N.T., 2/12/13, at 111. Attorney Casamento told Erkert that they could seek to strike this juror, but

_____

*Forbes*, 867 A.2d 1268, 1272-73 (Pa. Super. 2005) ("The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.").

that it was their recommendation to keep her because she fit their overall voir dire strategy. *Id.* Erkert "went along" with the recommendation and did not object to keeping her on the panel. *Id.* at 112.

The PCRA court concluded that this issue lacked any arguable merit. PCRA Court Opinion, 4/11/14, at 9. We cannot so easily reach that conclusion. The revelations by this juror indicate that Detective Beese was a close family friend that she held in high esteem and it seems unreasonable to conclude that there is not at least arguable merit to this claim. However, we conclude that Erkert has failed to establish the second prong of the relevant test, "that counsel had no reasonable basis for his action or inaction[.]" *Burno*, 94 A.3d at 972.

Both Attorney Ratasiewicz and Attorney Casamento testified that their strategy for voir dire was to select as many young jurors as possible because they believed that younger jurors would be more willing to accept Erkert's defense to the sex case – that the homosexual relationship between them was consensual. N.T., 2/12/13, at 56-57, 111. They also testified that the juror in question "was one of the few young jurors" in the jury pool. *Id.* at 58. "Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010) (quoting *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa.

1998)). An appellate court will conclude that a chosen strategy lacked a reasonable basis only if the appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued[.]" ***Commonwealth v. Davido***, __ A.3d __, __, 2014 WL 7182086, at *5 (Pa. Dec. 15, 2014). Although one might question the strategy to allow a juror personally familiar with a Commonwealth witness to be seated, Erkert has failed to allege, much less prove, that the strategy of seating younger jurors at all costs did not provide a reasonable basis designed to effectuate his interests. Accordingly, we find that this allegation of ineffectiveness fails on this ground.[2]

Erkert's final allegation is that he was denied effective assistance of counsel because Attorney Ratasiewicz and Attorney Malloy both filed post-sentence motions and then ignored communications from the trial court about who was going to handle them, resulting in their denial without a hearing. Erkert's Brief at 18.[3] This claim is without merit. There is no right

---

[2] ***See Commonwealth v. McKeever***, 947 A.2d 782, 786 n.4 (Pa. Super. 2008) (holding that this Court is empowered to affirm a PCRA court's decision on grounds other than those relied on by the PCRA court).

[3] Both attorneys filed post-sentence motions arguing that Erkert's sentence was unduly harsh and excessive. Attorney Ratasiewicz testified that although he received a letter from Erkert indicating that Erkert hired Attorney Malloy to represent him on appeal, it was not clear whether Attorney Malloy was going to file post-sentence motions, and so, in order to protect his client's rights, he filed a post-sentence motion. N.T., 2/12/13, at 72-74. Erkert did not call Attorney Malloy to testify at the PCRA hearing as to why he did not respond to the trial court's inquires.

to a hearing on post-sentence motions; rather, it is within the trial court's discretion to determine whether to hold a hearing. ***See*** Pa.R.Crim.P. 720(B)(2)(b) ("The judge shall also determine whether a hearing or argument on the motion is required, and if so, shall schedule a date or dates certain for one or both."). As such, Erkert cannot establish that counsels' action, or inaction, caused the trial court to dispose of the post-sentence motions without a hearing.[4] This claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2015

---

[4] We note that the trial court addressed and rejected the merits of the excessiveness challenge at length in the 1925(a) opinion it authored for Erkert's direct appeal. Trial Court Opinion, 6/26/08, at 16-18.