J-S24023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AARON I. MACK | : | |
| | : | |
| Appellant | : | No. 1318 WDA 2020 |

Appeal from the PCRA Order Entered October 26, 2020
In the Court of Common Pleas of Cambria County
Criminal Division at No(s):  CP-11-CR-0001673-2016

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED: OCTOBER 25, 2021**

Appellant, Aaron I. Mack, appeals from the order entered in the Cambria County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On May 23, 2016, the Commonwealth charged Appellant with one count of first-degree murder and two counts of aggravated assault.  Appellant's jury trial commenced on April 10, 2017, and the Commonwealth called Massai Dickey as a witness.[2]  While on the stand,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] Mr. Dickey knew the victim and was present at the crime scene on the night of the murder.

- 1 -

Mr. Dickey provided information as to his name, age, residence, his criminal history, and his relationship with the victim in this case. When asked about his whereabouts on the night of Decedent's death, Mr. Dickey replied "I can't do this." The court then ordered a sidebar with counsel to discuss pending charges against Mr. Dickey and whether he was represented by counsel.

(PCRA Court Opinion, filed January 29, 2021, at 5) (internal record citations omitted).

The Commonwealth informed the trial court that Mr. Dickey's charges were unrelated to the instant trial. The Commonwealth met with Mr. Dickey twice in preparation for trial, the second time being three days prior to trial, and Mr. Dickey gave no indication that he was unwilling to testify. The trial court took a brief recess and contacted Mr. Dickey's attorney, who indicated that he had no objection to Mr. Dickey's testimony in the instant trial.

After [the] recess, the Commonwealth recalled Mr. Dickey as a witness. Mr. Dickey answered affirmatively when asked if he had been interviewed by Johnstown Police on December 31st of 2015, and agreed that he had been at Solomon Homes on December 30th of 2015, but refused to answer any further questions. The court compelled the witness to answer, but Mr. Dickey refused to do so and was ultimately excused. During a second sidebar, counsel for Appellant objected to admission of Mr. Dickey's prior statements to the police on the grounds that he would be unable to cross-examine the witness. The court ultimately agreed with Appellant's counsel and Mr. Dickey was not recalled as a witness for the remainder of the trial.

(*Id.*) (internal record citations omitted).

Both parties agreed that Mr. Dickey's brief testimony could be referenced during closing arguments. During his closing argument,

Appellant's counsel argued:

> Next witness I believe was Massai Dickey. He didn't really tell us a whole lot. Now the Commonwealth may say, well, he was afraid. We think, we don't know why, but we think he might have been afraid. Did Massai Dickey say I'm afraid? In his brief testimony he did tell us about his criminal record. And those crimes were crimes of dishonesty. Maybe he lied to the police. Maybe that's why he didn't want to testify. Maybe he didn't want to lie to this jury. Maybe he didn't want to implicate himself in something. We don't know why he didn't testify. We can only guess and surmise and the judge is going to instruct you that you have to base your decision on the evidence presented. You can't say, well I think this might be the reason. We don't know. And nobody knows. The only person who knows is Massai Dickey and he didn't tell us.

(N.T. Trial, 4/12/17, at 33-34).

The Commonwealth's closing argument responded to defense counsel's assertions as follows:

> We know that [Massai Dickey] is 46 years old. We know that he is a convicted felon. We know that he has convictions from Newark, New Jersey, as well as Cambria County, dating back to 1993. We know that he took the stand. And we know that he refused to testify. We know that he met with officers to prepare for trial just last Friday. And he gives his condolences to the family. He just refuses to give you his testimony. He knew [the victim] from the time [the victim] was seven years old. Still refused to testify. You can approach this from your own common sense and life experience and think about that.… He pled the Fifth. If they can question why Devone[3] is testifying, then you can question why Massai is not.

(*Id.* at 86).

---

[3] Devone Huddleston was a Commonwealth witness who identified Appellant as the shooter.

The jury convicted Appellant of all counts on April 12, 2017. On May 23, 2017, the court sentenced Appellant to life imprisonment without the possibility of parole. This Court affirmed the judgment of sentence on December 27, 2018, and our Supreme Court denied allowance of appeal on July 31, 2019. *See Commonwealth v. Mack*, 203 A.3d 356 (Pa.Super. 2018) (unpublished memorandum), *appeal denied*, 654 Pa. 598, 216 A.3d 1043 (2019).

Appellant timely filed a *pro se* PCRA petition on June 12, 2020. The court appointed counsel, who filed an amended petition on August 18, 2020. The court conducted an evidentiary hearing on October 13, 2020. At that time, Appellant elected not to call any witnesses and proceeded to argument based on the trial transcript. The court dismissed Appellant's PCRA petition by order entered October 26, 2020.

Appellant timely filed a notice of appeal on November 25, 2020. On December 1, 2020, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely complied on December 15, 2020.

Appellant raises two issues for our review:

> Did trial counsel err in not requesting a mistrial when a Commonwealth witness invoked the Fifth Amendment right against self-incrimination in the presence of the jury?

> Was trial counsel ineffective in not requesting a mistrial when the Commonwealth attorney made repeated references to testimony that had been stricken from the record earlier in the trial during her closing argument?

- 4 -

(Appellant's Brief at 6).

In his two issues, Appellant claims that "it [was] clear that Mr. Dickey, after a few pretextual questions, and after his answers to those questions provided answers that were harmful and prejudicial to Appellant, indicated he could not testify further." (*Id.* at 13). After that point, Appellant insists the Commonwealth was put on actual notice that Mr. Dickey was invoking the Fifth Amendment privilege, and the Commonwealth acted improperly by continuing to question him in front of the jury. Appellant argues that a request for mistrial at this juncture would have had arguable merit, and no reasonable strategic basis exists for trial counsel's failure to act because "the caselaw indicates the [c]ourt would have been restrained to grant the objection and grant the request for a mistrial." (*Id.* at 17). Appellant maintains counsel's error caused him prejudice because "the circumstances surrounding Dickey's invocation of the Fifth Amendment happened in such a way the jury would be at risk of inferring guilt of Appellant through association." (*Id.* at 14-15).

Further, Appellant contends that the prosecutor repeatedly referenced Mr. Dickey's testimony in her closing arguments. Appellant asserts that the prosecutor asked the jury to "determine that the reason Mr. Dickey is not testifying is because his testimony would be harmful to [A]ppellant." (*Id.* at 21). Appellant argues that a request for mistrial would have been meritorious at this juncture as well, trial counsel's failure to do so had no reasonable strategic basis, and he was prejudiced as a result. Appellant concludes that

trial counsel's failures to request a mistrial amounted to ineffective assistance, and this Court must grant appropriate relief. We disagree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We do not give the same deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190 (Pa.Super. 2012).

Pennsylvania law presumes counsel has rendered effective assistance. **Commonwealth v. Williams**, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. **Commonwealth v. Kimball**, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. **Williams, supra**.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis

for the assertion of ineffectiveness is of arguable merit…." ***Commonwealth***

***v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994).  "Counsel cannot be

found ineffective for failing to pursue a baseless or meritless claim."

***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis'
> test to determine whether counsel's chosen course was
> designed to effectuate his client's interests.  If we conclude
> that the particular course chosen by counsel had some
> reasonable basis, our inquiry ceases and counsel's
> assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

"A finding that a chosen strategy lacked a reasonable basis is not

warranted unless it can be concluded that an alternative not chosen offered a

potential for success substantially greater than the course actually pursued."

***Commonwealth v. Howard***, 553 Pa. 266, 274, 719 A.2d 233, 237 (1998).

> As a general rule, a lawyer should not be held ineffective
> without first having an opportunity to address the
> accusation in some fashion.  …
>
> In recent years, this Court has expressed a distinct
> preference for a hearing on counsel's strategy before
> venturing to hold that counsel lacked a reasonable basis for
> his or her actions or inactions.  …
>
> …Review of the reasonableness of counsel's trial
> performance is not measured by an exercise in "spot the
> objection," as might occur in a law school evidence
> examination.  Counsel are not constitutionally required to
> forward any and all possible objections at trial, and the
> decision of when to interrupt oftentimes is a function of
> overall defense strategy being brought to bear upon issues
> which arise unexpectedly at trial and require split-second
> decision-making by counsel.  The fact that an appellate
> court, reviewing a cold trial record, cannot prognosticate a

reasonable basis for a particular failure to raise a plausible objection does not necessarily prove that an objectively reasonable basis was lacking.

*Commonwealth. v. Colavita*, 606 Pa. 1, 34-37, 993 A.2d 874, 895-96

(2010) (internal citations omitted).

Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002)

(some internal citations and quotation marks omitted).

Regarding counsel's failure to request a mistrial:

In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice.

*Commonwealth v. Tucker*, 143 A.3d 955, 961 (Pa.Super. 2016), *appeal*

*denied*, 641 Pa. 63, 165 A.3d 895 (2017).

Instantly, Appellant's PCRA filings did not include a signed certification from trial counsel addressing Appellant's claims. Likewise, trial counsel did not testify at the PCRA hearing. Thus, the PCRA court concluded:

> Appellant has failed to demonstrate that his trial counsel had no reasonable basis for failing to request a mistrial. At his PCRA hearing on October 13, 2020, Appellant failed to call his trial counsel as a witness. Instead, Appellant merely asserts that a motion for mistrial would have been meritorious and, therefore, trial counsel could not have had a reasonable basis for failing to request one. This is unsupported both by the record in this case and by the decisions of Pennsylvania courts…. Because Appellant's trial counsel was not called as a witness at the PCRA hearing, it would be contrary to the jurisprudence of this Commonwealth to presume the lack of a reasonable basis for his decisions.

(PCRA Court Opinion at 6).

We agree with the PCRA court's analysis. Appellant's failure to proffer input from trial counsel renders him unable to satisfy the "reasonable strategic basis" prong for both the ineffectiveness claims presented in his PCRA petition. **See Colavita, supra**. Failure to satisfy this prong of the ineffective assistance of counsel test causes both of his appellate claims to fail.[4] **See Williams, supra**. Accordingly, we affirm.

_____

[4] Moreover, to the extent Appellant argues that trial counsel had no reasonable basis for failing to request a mistrial because the law is clear that a mistrial was warranted, we disagree. Appellant relies on our Supreme Court's holding in **Commonwealth v. DuVal**, 453 Pa. 205, 307 A.2d 229 (1973) to support this assertion. In **DuVal**, the witness' counsel informed the prosecutor prior to trial that the witness would invoke the Fifth Amendment privilege against self-incrimination if called to testify. The prosecutor, believing the assertion

*(Footnote Continued Next Page)*

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2021

---

of privilege to be invalid, called the witness to testify at trial. Based on these facts, our Supreme Court held that "the prosecution, once informed that a witness intends to claim a privilege against self-incrimination, commits error in calling that witness to the stand before the jury where the witness is a person.… likely to be thought by the jury to be associated with the defendant in the incident or transaction out of which the criminal charges arose." (**Id.** at 217, 307 A.2d at 234).

Here, the facts are materially distinguishable. The Commonwealth had no prior knowledge of Mr. Dickey's intent to invoke the Fifth Amendment. Mr. Dickey actively participated in trial preparation interviews and maintained that he was willing to testify until three days prior to the trial. (N.T. Trial at 47-49). Furthermore, Mr. Dickey's pending charges were unrelated to the instant matter and his counsel had no objection to his testimony. (**Id.**) Until Mr. Dickey refused to answer questions on the stand, he gave no indication that he wished to invoke the protection of the Fifth Amendment. Thus, we cannot agree with Appellant's assertion that the law is so clear that trial counsel's failure to request a mistrial was *per se* unreasonable.