J-S03005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JERMAINE LEMAR KENNEDY, | |
| Appellant | No. 1913 WDA 2015 |

Appeal from the PCRA Order of November 17, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013109-2014

BEFORE:  OLSON, SOLANO and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 22, 2017**

Appellant, Jermaine Lemar Kennedy, appeals from the order entered on November 17, 2015, which dismissed his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On March 3, 2015, Appellant entered a negotiated guilty plea at three criminal docket numbers.  Under the plea agreement, Appellant agreed to plead guilty to:  two counts of possession of a controlled substance with the intent to deliver ("PWID"); three counts of possession of a controlled substance; three counts of possession of a firearm by a prohibited person; and, one count each of receiving stolen property, criminal use of a

_____
* Retired Senior Judge assigned to the Superior Court.

communications facility, and possession of drug paraphernalia.[1] In exchange, the Commonwealth agreed to withdraw one count of PWID and recommend an aggregate sentence of four to eight years in prison, followed by five years of probation.

During the guilty plea hearing, the Commonwealth set forth the factual basis for Appellant's guilty plea:

> Your Honor, had Case No. 2014-14631 gone to trial, the Commonwealth would have called as its witnesses City of Pittsburgh Police Officers Glavach [], Novosel []; and from the Allegheny County Medical Examiner's Office, Emily Ashy. They would testify substantially as follows:
>
> That on August the 7th, 2014, the officers mentioned observed what they believed to be a drug transaction between [Appellant] and an individual named Adam Todd. They pursued Mr. Todd and, in fact, recovered heroin from him. They then went back and got [Appellant] who was in or at his Mercedes automobile and took him into custody. A search was made. They recovered additional heroin. Mr. Todd had ten stamp bags marked "HEART ATTACK" in red ink, and there were four stamp bags marked "RICH" in red ink. [Appellant] had $101 in [United States] currency and three cell phones.
>
> The drugs were turned over to the Allegheny County Medical Examiner's Office for testing. . . . The weight of the heroin was 0.67 grams and tested positive for heroin. . . .
>
> The car was towed by the police. Subsequently[,] the police received information from an informant that there were more drugs to be found in the car. And so at Case No. 2014-13098, the Commonwealth would call City of

---

[1] 35 P.S. § 780-113(a)(30) and (16), 18 Pa.C.S.A. §§ 6105(a)(1), 3925(a), and 7512(a), and 35 P.S. § 780-113(a)(32), respectively.

Pittsburgh Police Officers Brian Martin[,] Brian Burgunder, []
William Churilla, [] Walter Jones[,] and Jeffrey Deschon[.]

Having received information from the informant there were
more drugs in the car, they took a K-9 officer on August the
15th to the impound lot. The dog hit on the car, and as a
result, the officers obtained a search warrant for the car
resulting in the recovery of [69] blue stamp bags marked
"MTV" each holding tan powder, [68] stamp bags – excuse
me, [12] stamp bags stamped "Buzz Light Year" or with a
Buzz Lightyear picture each holding tan powder, five stamp
bags stamped "Heart Attack" each holding tan powder,
three stamp bags marked "Black Jack" each holding tan
powder, and three stamp bags stamped "Rich" each holding
tan powder, and one each of stamp bags marked "Focus"
and "Chi-Raq". . . . The material tested positive for heroin.
. . . The approximate weight was 1.592 grams. There was
an additional knotted baggie of off-white solids that tested
positive for cocaine. That weighed .518 grams.

It would be the officer's opinion, based on their training and
experience, the quantity of heroin, that the heroin was
possessed in that case with the intent to deliver.

As a result of finding the heroin pursuant to the search
warrant, an arrest warrant was issued for [Appellant] for
that material, the heroin and the cocaine; and on
September the 11th, 2014, at Case No. 2014-13109, the
Commonwealth would call Detective Sheila Ladner[,]
Detective Joseph Novakowski[,] Detective Matt Truesdell[,]
Detective Anthony Palermo[,] and from the Allegheny
County Crime Lab, Jason Very, Nicole James[,] civilian
witness, John Ciangiarulo[], and Ryan Young from the
Pittsburgh Police. They would testify that an attempt was
made to locate [Appellant] on the warrant issued from the
previous case. They located him in the McKees Rocks area,
and he was going in and out of a house on Olivia, but they
weren't sure which one, and he was seen going to a black
Mercedes, not the same black Mercedes that was involved in
the first case. He was seen at and in the trunk of the car.

Detective Ladner placed phone calls and text messages to a
phone belonging to [Appellant] and arranged to buy a

bundle of heroin from [Appellant] in the McKees Rocks area under a bridge.

Once the meet was set, the detectives who were watching the street observed [Appellant] leave the house on Olivia, go over to the trunk of the car, open it, take something out and then head down . . . towards the bridge at which time United States Marshals and City of Pittsburgh Police apprehended him. At the time they apprehended him, he was on his cell phone with Detective Ladner. She was giving him directions on where she was, and she'd testify that she actually heard [Appellant] – the beginning of the attempt to take [Appellant] into custody over the phone.

[Appellant] was searched incident to arrest and found to have a bundle of ten blue stamp bags marked "DRAFT," [] on his person as well as $60 in cash . . . and they recovered the cell phone.

Once he was taken into custody, they sat on the black Mercedes that he had gone to before he went to make the deal and obtained a search warrant for it. When they executed the search warrant, they recovered Exhibit 2, a gray Atlanta Braves drawstring bag which contained the following: [a] plastic sandwich bag containing two bundles and seven loose bags of heroin marked "DRAFT," [] in blue ink that matched the bundle [Appellant] had on his person when he was taken into custody.

There was also a Ziploc bag containing one knotted baggie of loose crack cocaine and one knotted baggie containing a number of knotted baggie corners of crack cocaine.

There was also a brown box which contained [36] white unmarked bags of heroin, one Scotch Tape roll, . . . two stamp pads and two wooden stampers, neither of which was the "DRAFT" stamp.

They also recovered a Ziploc baggie of marijuana and a plastic bag containing multiple bundles of heroin marked with a red stamp. The stamp itself was unreadable.

There was also a pack of Juicy Fruit gum and a black digital scale.

Then there were three additional Ziploc baggies each of which contained a handgun. One contained a loaded Beretta [92FS] 9-millimeter semiautomatic. . . . One contained a loaded Israel Military Industries Desert Eagle 9-millimeter semiautomatic handgun. . . . That gun had been reported stolen by Mr. Ciangiarulo approximately eight months earlier from his residence in McKees Rocks. And the third one was an FIE .22 caliber Model T18 revolver. . . .

We would introduce documents that were recovered from the car in [Appellant's] name; specifically, purchase documents for the Mercedes that had been seized earlier as well as a financial responsibility card for the Mercedes that had been seized earlier in the first case that led to all of this.

The drugs were turned over to the Allegheny County Medical Examiner's Office. . . . The total weight of the heroin on [Appellant] was . . . in excess of .25 grams. . . . There was a calculated collective net weight of slightly over one gram of the [27] blue stamp bags. There was the cocaine base. The crack cocaine weighed 5.815 grams. That was the baggie of it. And then the multiple baggies had a collective gross weight of 2.091 grams. There was also .839 grams in the exhibit holding the [36] white stamp bags. . . . The marijuana weighed 14.923 grams. . . .

The guns were all examined and test-fired, and they were all found to be in good operating condition.

It would be the officer's opinion, based on their training and experience, the quantity of heroin, the possession of the digital scale, the ink pads, the stampers, the multiple stamp bags with the different stamp bags, the lack of any use paraphernalia, the fact that [Appellant] engaged in conversation with the detective to make a sale and, in fact, went to make a sale of heroin, that he possessed the heroin as well as the crack cocaine with intent to deliver and not solely for personal use. There was no paraphernalia whatsoever for the crack cocaine.

We would also introduce evidence that [Appellant] had two prior felony drug convictions which would make him a person who is not permitted to possess a firearm. . . .

N.T. Guilty Plea and Sentence, 3/3/15, at 6-12.

At the conclusion of the factual recitation, Appellant testified that he was "pleading guilty to [the] charges because [he is], in fact, guilty." *Id.* at 12-13. The trial court then sentenced Appellant in accordance with the negotiated term of incarceration; specifically, the trial court sentenced Appellant to serve an aggregate term of four to eight years in prison, followed by five years of probation, for his convictions. *Id.* at 14-15.

On April 20, 2015, Appellant filed an untimely, *pro se* "Motion to Withdraw Guilty Plea." Within the motion, Appellant requested to withdraw his guilty plea for a number of reasons, including: 1) "counsel was ineffective for fail[ing] to present [Appellant's] mental health status before sentencing in court for mitigating circumstances;" 2) "counsel [was] ineffective . . . for not filing [a] suppression [motion] as requested by [Appellant];" 3) "counsel was [] ineffective for nondisclosure of discovery;" and, 4) "guilty plea was coerced due to misrepresentation by counsel and the apology to trial judge while taking the plea." Appellant's "Motion to Withdraw Guilty Plea," 4/20/15, at 1-3.

The trial court correctly construed Appellant's untimely motion as a first petition filed under the PCRA. *See Commonwealth v. Johnson*, 803 A.2d 1291, 1293 (Pa. Super. 2002) ("the PCRA provides the sole means for obtaining collateral review, and [] any petition filed after the judgment of

- 6 -

sentence becomes final will be treated as a PCRA petition"). Therefore, the trial court appointed counsel to represent Appellant during the PCRA proceedings. PCRA Court Order, 4/28/15, at 1. However, on September 2, 2015, appointed counsel filed a no-merit letter and a request to withdraw as counsel, pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). After reviewing counsel's no-merit letter, the PCRA court granted counsel's petition to withdraw and issued Appellant notice, pursuant to Pennsylvania Rule of Criminal Procedure 907, of its intent to dismiss Appellant's petition in 20 days, without holding a hearing. PCRA Court Order, 10/21/15, at 1-3.

Appellant did not file a meaningful response to the PCRA court's Rule 907 notice and, on November 17, 2015, the PCRA court finally dismissed Appellant's petition. PCRA Court Order, 11/17/15, at 1.

Appellant filed a timely, *pro se* notice of appeal from the PCRA court's order and the PCRA court appointed counsel to represent Appellant on this appeal. **See** PCRA Court Order, 2/4/16, at 1.[2] Appellant raises one claim on appeal:

_____

[2] The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Moreover, although Appellant filed a purported Rule 1925(b) statement *pro se*, Appellant only did so after the PCRA court appointed counsel to represent him on appeal. **See** Appellant's *Pro Se* Rule 1925(b) Statement, 2/16/16, at 1. Therefore, since Appellant filed his *pro se* Rule 1925(b) statement while he was represented by counsel, we will not hold that Appellant's *pro se* Rule 1925(b) statement constricts the claims he
*(Footnote Continued Next Page)*

Did the [PCRA] court err as a matter of law in refusing to grant relief on the [PCRA] petition in the form of permitting [Appellant] to withdraw his guilty plea due to the ineffective assistance of counsel?

Appellant's Brief at 5.

As we have stated:

[t]his Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. In evaluating a PCRA court's decision, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. We may affirm a PCRA court's decision on any grounds if it is supported by the record.

*Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010) (internal citations omitted).

*(Footnote Continued)* ————————————

is entitled to raise on appeal. *See Commonwealth v. Ellis*, 626 A.2d 1137, 1139 (Pa. 1993) ("there is no constitutional right to hybrid representation either at trial or on appeal"); *Commonwealth v. Pursell*, 724 A.2d 293, 302 (Pa. 1999) ("[w]e will not require courts considering PCRA petitions to struggle through the *pro se* filings of [petitioners] when qualified counsel represent[s] those [petitioners]"); *Commonwealth v. Ruiz*, 131 A.3d 54, 56 n.4 (Pa. Super. 2015) (the defendant's "*pro se* motion to modify sentence . . . was a legal nullity . . . [because] he was represented by counsel" at the time); Pa.R.Crim.P. 576(A)(4) (where a represented criminal defendant submits a *pro se* document for filing, "the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, [] place the document in the criminal case file[, and forward a copy of the document] to the defendant's attorney and the attorney for the Commonwealth"); Pa.R.Crim.P. 576 cmt. (Rule 576(A)(4)'s "requirement that the clerk time stamp and make docket entries of the filings in these cases only serves to provide a record of the filing, and does not trigger any deadline nor require any response").

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Rivera*, 10 A.3d at 1279. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

To establish the reasonable basis prong, we must look to see whether trial counsel's strategy was "so unreasonable that no competent lawyer would have chosen that course of conduct." *Commonwealth v. Williams*, 640 A.2d 1251, 1265 (Pa. 1994). An attorney's trial strategy "will not be

found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998). Further, if an appellant has clearly not met the prejudice prong, a court may dismiss the claim on that basis alone and need not determine whether the other two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995).

We also note that "[a] criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002). Yet, where the ineffectiveness of counsel is claimed in connection with the entry of a guilty plea, a petitioner may only obtain relief where "counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating [the] entry of an unknowing, involuntary, or unintelligent plea." *Commonwealth v. Moser*, 921 A.2d 526, 530 n.3 (Pa. Super. 2007) (*en banc*) (internal citations and quotations omitted). As we have explained:

> once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established.

*Commonwealth v. Stork*, 737 A.2d 789, 791 (Pa. Super. 1999) (internal quotations, citations, and corrections omitted), *quoting Commonwealth v.*

*Myers*, 642 A.2d 1103, 1105 (Pa. Super. 1994). "To prove prejudice, [an] appellant must prove he would not have [pleaded] guilty and would have achieved a better outcome at trial." *Commonwealth v. Fears*, 86 A.3d 795 (Pa. 2014) (internal quotations and citations omitted).

According to Appellant, his trial counsel was ineffective for failing to file a suppression motion and for failing to inform the trial court about his "mental health issues." Appellant's Brief at 17.[3] These claims fail.

First, with respect to counsel's failure to file a suppression motion, the claim of ineffectiveness fails because Appellant never specified the possible basis for a suppression motion in his PCRA petition or in his brief to this Court and Appellant thus never claimed or argued that: the unarticulated suppression claim had arguable merit; counsel's failure to file the suppression motion lacked "some reasonable basis designed to effectuate his interests;" or, Appellant suffered prejudice as a result of counsel's alleged failing. *Fulton*, 830 A.2d at 572. The claim thus immediately fails.

With respect to Appellant's claim that his trial counsel was ineffective for failing to inform the trial court about Appellant's "mental health issues," the claim likewise fails because Appellant never pleaded or claimed that he

---

[3] Within Appellant's brief to this Court, Appellant also claims that counsel was ineffective for failing to inform the prosecution about his "mental health issues." Appellant's Brief at 14 and 17. Appellant never raised this claim in his PCRA petition; as such, the claim is waived. *Fulton*, 830 A.2d at 572; Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

suffered from some specific, identifiable "mental health issue" and Appellant never pleaded or claimed that the trial court would have acted any differently had it known of Appellant's alleged "mental health issue." ***See Fulton***, 830 A.2d at 572.

Therefore, Appellant's claims on appeal fail.

Order affirmed. Jurisdiction relinquished.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2017