719 A.2d 233

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Melvin K. HOWARD, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 1, 1998.

Decided Oct. 1, 1998.

David Rudenstein, Philadelphia, for M. Howard.

Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

In this capital case, Appellant, Melvin Howard, appeals from an order denying post-conviction relief in the form of a new penalty phase hearing.

On September 27, 1987, during an altercation involving several men, Howard killed Clarence Woodlock by stabbing him with a knife sixteen times, first in the back, then in the chest using both hands. Howard left the scene of the killing, stating that he was going home, and he subsequently fled to his mother's residence in Georgia, where he was ultimately apprehended. Trial was conducted in September, 1989, and the jury returned verdicts of guilty on the charges of first degree murder, 18 Pa.C.S. § 2502(a), and possessing instruments of crime, 18 Pa.C.S. § 907.

In the penalty phase hearing that followed, the Commonwealth sought to establish the aggravating circumstance of a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9). In this regard, the parties stipulated to Howard's 1977 and 1978

New Jersey convictions for "atrocious assault and battery," N.J.S. § 2A:90–1 (repealed), resulting from separate incidents in which Howard stabbed a man in the heart and shot another man with a revolver (both wounds being non-fatal), and to a 1980 Pennsylvania conviction for robbery. In an attempt to establish a mitigating circumstance involving Howard's character, 42 Pa.C.S. § 9711(e)(8), the defense presented testimony from one witness, Jerrold Caughlan, a chaplain assigned to the Philadelphia prison system, with whom Howard had become acquainted while incarcerated. Following deliberations, the jury determined that there was one aggravating circumstance and no mitigating circumstances and, accordingly, returned a sentence of death. *See* 42 Pa.C.S. § 9711(c)(1)(iv).

Subsequently, the trial court permitted trial counsel to withdraw. Post-verdict counsel was appointed (who also represented Howard on direct appeal), and Howard filed post-sentence motions raising several claims of trial error and ineffective assistance of trial counsel. The trial court conducted a hearing, at which time Howard presented testimony from his mother, his sister and trial counsel. The trial court subsequently denied the post-sentence motions, and this Court affirmed the judgment of sentence on direct appeal. *See Commonwealth v. Howard*, 538 Pa. 86, 645 A.2d 1300 (1994).

On May 11, 1995, Howard filed a *pro se* petition under the Post Conviction Relief Act, 42 Pa.C.S. § § 9541–9546 (the "PCRA").[1] The PCRA court appointed counsel, who filed an amended petition on Howard's behalf, as well as a petition seeking the appointment of an expert to conduct a psychological examination. The PCRA court granted such request, and Dr. Allan M. Tepper, a forensic psychologist and attorney, evaluated Howard and prepared a report. Howard then filed a supplemental PCRA petition, which included a request for appointment of a private investigator to collect evidence of potential mitigating circumstances. After entertaining oral argument, the PCRA court denied all outstanding petitions.

---

**1.** Although the PCRA has been amended twice since Howard filed his petition, the pertinent provisions of the statute have not been altered in any relevant regard.

In this appeal, Howard raises six issues. In his first three claims, Howard asserts that trial counsel was ineffective in the penalty phase: for having failed to present a "mitigation expert"; for having failed to argue mitigation arising from the circumstances of the offense; and for informing the jury that Howard's family was present but would not be called to testify.[2] In addition, Howard alleges that appellate counsel was ineffective for having failed to properly argue that he was prejudiced by trial counsel's failure to timely request an instruction to the jury that no adverse inference could be drawn from Howard's failure to testify. Finally, Howard claims that the PCRA court erred in failing to grant his request for the appointment of a private investigator and in dismissing his various PCRA petitions without a hearing.

This Court's review of the denial of post-conviction relief is limited to an examination of whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. *Commonwealth v. Morales*, 549 Pa. 400, 408, 701 A.2d 516, 520 (1997) (citing *Commonwealth v. Travaglia*, 541 Pa. 108, 117 n. 4, 661 A.2d 352, 356 n. 4 (1995), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996)). With respect to Howard's claims of ineffective assistance of trial counsel, he is required to establish that each claim has arguable merit; that trial counsel had no reasonable basis for proceeding as he did; and that the alleged ineffectiveness of counsel so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *See* 42 Pa.C.S. § 9543(a)(2)(ii); *see generally Commonwealth v. Collins*, 546 Pa. 616, 619, 687 A.2d 1112, 1113 (1996).

Howard first alleges that trial counsel was ineffective for failing to present a mitigation expert at the penalty phase hearing. In connection with this contention, Howard makes a

---

**2.** In order to avoid waiver, which otherwise might be associated with the failure to raise such issues on direct appeal, Howard claims serial ineffectiveness on the part of his trial and appellate counsel. *See generally Commonwealth v. Chmiel*, 536 Pa. 244, 250, 639 A.2d 9, 12 (1994).

broader suggestion that trial counsel was inadequately prepared in the penalty phase.

Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. *See Commonwealth v. Williams,* 537 Pa. 1, 28, 640 A.2d 1251, 1265 (1994) (citing *Commonwealth v. Savage,* 529 Pa. 108, 112, 602 A.2d 309, 311 (1992)). Trial counsel will not be deemed ineffective for failing to assert a claim that would not have been beneficial, or for failing to interview or present witnesses whose testimony would not have been helpful. *See Williams,* 537 Pa. at 29, 640 A.2d at 1265; *see also Commonwealth v. McNeil,* 506 Pa. 607, 619, 487 A.2d 802, 808 (1985). Nor can a claim of ineffective assistance generally succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued. *See Commonwealth v. Chester,* 526 Pa. 578, 612, 587 A.2d 1367, 1384 (1991), *cert. denied,* 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991); *see also Commonwealth v. Washington,* 549 Pa. 12, 32, 700 A.2d 400, 410 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2375, 141 L.Ed.2d 742 (1998). A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. *See Commonwealth v. Brown,* 544 Pa. 406, 425, 676 A.2d 1178, 1186 (citing *Commonwealth v. Pirela,* 510 Pa. 43, 59, 507 A.2d 23, 31 (1986)), *cert. denied,* —— U.S. ——, 117 S.Ct. 614 (1996).

In this case, the defense strategy in the penalty phase was to attempt to establish the mitigating circumstance at Section 9711(e)(8) by emphasizing positive aspects of Howard's character through Chaplain Caughlan. The chaplain testified that Howard's conduct in prison was "mature," and that he appeared to be a "steady, stable individual who had a very deep faith." Chaplain Caughlan further stated:

> I think in my experience with [Howard], he has been positive. He's helped a lot of young men. I didn't know him before prison. I have no idea of what his past was like.

Holmesburg prison is a place where there's a lot of tension, a lot of noise. There's a lot of—there are people kind of pushing all the time. And it's difficult for people to kind of keep their balance. And I think Melvin not only keeps his own, but he helps other people keep theirs. I don't know, maybe God wants him in prison for that.

Chaplain Caughlan also expressed his belief that Howard would continue to have a positive influence on others in the prison system.[3]

Howard asserts that such testimony was inadequate and points to Dr. Tepper's report as indicative of the type of evidence that he contends should have been offered. In his report, Dr. Tepper briefly summarized his interview with Howard. The report reflects Howard's description of his own background, including: his upbringing in an intact family in a small town in Georgia; his residence with his mother until approximately age twenty-five; his ultimate residence in Philadelphia in the 1980's; an intermittent work history involving manual labor jobs and the care of properties for one of his sisters; and the death of his father from medical complications associated with alcoholism. Such description did not include any suggestion of physical or emotional abuse or other unusual hardship. Dr. Tepper stated that Howard indicated no relevant history of psychological or psychiatric dysfunction or treatment; Howard did, however, state that he regularly used marijuana from his late teens through the time of his arrest for Woodlock's killing. Dr. Tepper concluded as follows:

Thus, although limited information currently is available regarding this past drug use, it can be stated that at the time of the incident in question, Mr. Howard was exhibiting behavioral patterns often associated with drug dependency. Presently, Mr. Howard is functioning within the Low Average range of intelligence. He displays no signs or symptoms associated with a major mental illness. In addition, he

---

**3.** While the latter statements of opinion may have been objectionable as speculative, *see Commonwealth v. Henry*, 524 Pa. 135, 156, 569 A.2d 929, 939 (1990), *cert. denied*, 499 U.S. 931, 111 S.Ct. 1338, 113 L.Ed.2d 269 (1991), the Commonwealth did not lodge any objection, and the jury was permitted to consider the entire testimony as presented.

reports no past symptoms suggestive of a past illness of psychotic proportions. Mr. Howard reports leaving school during ninth grade, and does exhibit more limited verbal, problem-solving abilities. In this way, Mr. Howard is less adept at thinking about, analyzing, and working through internal feeling states. When frustrated, he may act or react in a less well-planned, more impulsive manner.

This Court, in a plurality decision, recently vacated a sentence of death in a case in which counsel was found to have been ineffective where, after having been informed that his client suffered from mental illness, counsel failed to pursue such evidence as a potential mitigating circumstance in the penalty phase of trial. *See Commonwealth v. Smith,* 544 Pa. 219, 245, 675 A.2d 1221, 1233–34 (1996) (plurality opinion), *cert. denied,* —— U.S. ——, 117 S.Ct. 1090, 137 L.Ed.2d 223 (1997).[4] On the other hand, this Court has declined to find counsel ineffective for failing to proffer testimony from a mental health professional to establish a mitigating circumstance where there is no showing that such testimony was indicated by evidence of mental illness, or that such testimony would have been beneficial in terms of altering the outcome of the penalty phase hearing. *See, e.g., Brown,* 544 Pa. at 425, 676 A.2d at 1187; *Commonwealth v. Lark,* 548 Pa. 441, 458, 698 A.2d 43, 51 (1997); *see also Commonwealth v. Smith,* 539 Pa. 128, 134 n. 6, 650 A.2d 863, 866–67 n. 6 (1994).

In this case, there was no evidence of notice to trial counsel that Howard suffered from any mental illness; indeed, Dr. Tepper's report indicates that he found no indication of past or present mental dysfunction. Nor has Howard demonstrated that a strategy of offering expert testimony along the lines of Dr. Tepper's report would have presented a substantially greater chance of establishing a mitigating circumstance

4. In her concurring opinion, Madame Justice Newman noted her agreement that counsel was ineffective for failing to investigate the potentially mitigating evidence, but wrote separately to emphasize that this Court repeatedly has found that the failure of defense counsel to adequately prepare, particularly in a capital case, is an abdication of the minimum performance required. *See Smith,* 544 Pa. at 246–47, 675 A.2d at 1234 (Newman, J., concurring).

than did the presentation of Chaplain Caughlan's testimony. Dr. Tepper's report merely suggested "impulsiveness" on Howard's part and attempted to explain this opinion by reference to Howard's personal background and qualities. Such impulsiveness, however, and the related background and qualities described, would not necessarily have been interpreted by the jury as being favorable.[5]

Because testimony from a mental health professional was not strongly indicated and the defense's chosen strategy was supported by a reasonable basis, trial counsel was not ineffective, and Howard is due no relief on his first claim.

Howard's second claim is that trial counsel was ineffective for having failed to argue that the circumstances of Woodlock's killing constituted a mitigating circumstance under Section 9711(e)(8). In his argument on this issue, Howard refers to the fact that the Commonwealth's evidence established that,

---

5. For example, the suggestion of "impulsiveness" alone could be taken by the jury as an unfavorable indication of future dangerousness. *See generally Commonwealth v. Lark*, 548 Pa. at 458, 698 A.2d at 51 (rejecting a claim of attorney ineffectiveness for failing to present mitigation testimony from a psychologist, where the psychologist's testimony was "not self-evidently helpful to [the appellant], for it appears that [the appellant] addressed the problem of his lack of self-control and low self-esteem [identified by the psychologist] by engaging in a life of crime and injuring others"); *Commonwealth v. Christy*, 540 Pa. 192, 208, 656 A.2d 877, 884 (finding that presentation of evidence of the defendant's psychological makeup in the penalty phase of a capital case "would likely have had a negative impact on the jury because appellant would have been portrayed as a highly dangerous person who could kill again"), *cert. denied*, 516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995); *Commonwealth v. Yarris*, 519 Pa. 571, 606, 549 A.2d 513, 531 (1988)(same), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989). Emphasis upon Howard's drug use similarly could have been prejudicial to Howard's interest. *See generally Commonwealth v. Crawley*, 541 Pa. 408, 417 n. 8, 663 A.2d at 676, 680 n. 8 (1995)(noting that "[i]nsofar as counsel could have reasonably concluded that evidence of appellant's illicit drug use would have served only to further inflame the jurors against his client, we conclude that such a tactical decision [to omit presentation of evidence of such use] is not outside the bounds of competent advocacy"), *cert. denied*, 517 U.S. 1212, 116 S.Ct. 1832, 134 L.Ed.2d 936 (1996); *Yarris*, 519 Pa. at 606, 549 A.2d at 531 (finding that evidence that the defendant was a "moderate to severe drug user" would have had a detrimental effect upon the defense effort to avoid the imposition of the death penalty).

prior to the killing, Woodlock and another man had initially attacked Howard.

Trial counsel, however, had made the following argument to the jury in the guilt phase of trial in support of his contention that the Commonwealth's evidence established, at best, voluntary manslaughter:

When you think you're acting in self-defense, when you've been the one who has been attacked, when you were attacked by two people, one of which as you heard was six foot four, drunk, got drugs in his system and is a drug addict, which you heard the testimony from the doctor, when one of those guys is in that kind of condition, he's coming at you for money or a jacket, and one of them has you in a full nelson, and then when he's chased off he then comes back with a two-by-four, and you now pull a knife and you start chasing him and you catch him and you stab him that many times, I submit that what you did is you overreacted. But that doesn't mean it's willful, premeditated murder. What that means is you went too far. You went beyond the legal bounds of self-defense. So what you did is you committed voluntary manslaughter. And then you never have to get into that other thing.

The Commonwealth's response was to focus upon the remaining circumstances of the killing, including the physical and temporal separation from the initial assault upon Howard, and the brutal details of the manner of the killing. For example, in his closing argument, the district attorney stated:

The whole truth includes the defendant not in danger anymore of bodily injury or serious bodily injury, not in danger anymore from [Woodlock] and his board, but hunts a man down like an animal a half a block and a half a block and a half a block and stabs him to death sixteen times. That's the whole truth in this case, not just a part of it, not just the part where [Woodlock] was the aggressor.

The jury accepted the Commonwealth's argument in the guilt phase and rejected Howard's. Accordingly, in the penalty phase, trial counsel took the tack of assuring the jury

that he did not wish to "minimize the crime," reminding them that "the crime is not an aggravating circumstance," and focusing upon positive character evidence through Chaplain Caughlan's testimony. Particularly in light of the evidence of Howard's prior convictions involving the stabbing of one man in the heart and the shooting of another, the circumstances of Woodlock's killing presented a double-edge sword, and counsel's strategy of attempting to shift the jurors' focus during their penalty phase deliberations had a reasonable basis. *See generally Williams*, 537 Pa. at 28, 640 A.2d at 1264–65 (noting that hindsight criticisms of trial strategy cannot "lay the groundwork for an allegation of ineffectiveness"). Moreover, in charging the jury, the trial court plainly indicated that the jurors were permitted to consider the circumstances of the offense as a mitigating circumstance, and that the jurors could consider the evidence presented at trial in their deliberations. Thus, even if counsel's strategy could be said to lack a reasonable basis, Howard would not be entitled to relief on this claim.

Howard's third claim of ineffectiveness relates to trial counsel's indication to the jury in the penalty phase that members of Howard's family were present in the courtroom but would not be called upon to testify. Howard asserts that the only reasonable inferences that the jury could have made from such commentary were that Howard's family thought so little of him that they would not take the stand in his support, and that trial counsel did not believe that testimony from family members would be beneficial.

The presence of members of Howard's family at trial was first disclosed to the jury in trial counsel's opening statement during the guilt phase. Apparently, part of the defense strategy at that point was to attempt to ameliorate the effect of the presence of Woodlock's family in the courtroom by pointing out to the jury that members of Howard's family also were present but were sequestered due to their status as potential witnesses. Howard's mother and sister

subsequently refused to testify in the penalty phase.[6] Given such refusal, and particularly in light of the jurors' prior knowledge of the presence of family members, trial counsel stated at the outset of the penalty phase:

> They've come up from Moultrie, Georgia, his mother, sister, et cetera. I am not going to call them to the stand. What I think is more important is, we will call the Chaplain Jerrold Caughlan to the stand for your consideration.

This commentary was an apparent attempt on the part of trial counsel to make the best of an unfortunate situation by taking personal responsibility for the family not testifying, while at the same time emphasizing Chaplain Caughlan's helpful testimony. Accordingly, the comments are supported by a reasonable basis.

Next, Howard seeks to reassert his claim, previously advanced on direct appeal, that his trial counsel was ineffective for failing to request an instruction to the jury that no adverse inference could be drawn from Howard's decision not to testify in the guilt phase. Having previously failed to obtain relief on such claim, Howard recasts his contentions as an attack upon appellate counsel's stewardship. In particular, Howard asserts that his appellate counsel should have argued to this Court that he was prejudiced by the absence of a "no-adverse-inference" instruction, because the jury could have held Howard's silence against him, and because the record demonstrates that the jury returned a harsh verdict based upon the facts.

▇ An appellant is precluded from raising a claim on post-conviction review that was previously and finally litigated

---

**6.** At the post-verdict hearing, Howard's mother and sister each testified that she was willing to testify in the penalty phase. Trial counsel, however, testified that both women had refused to testify. In its ruling on the post-sentence motions, the trial court made a credibility determination, choosing to believe trial counsel. While Howard has not raised the failure to call relatives as a separate claim in this appeal, it is clear that trial counsel cannot be deemed ineffective because he did not attempt to compel their testimony under these circumstances. *See generally Commonwealth v. Jones*, 539 Pa. 222, 237, 651 A.2d 1101, 1109 (1994), *cert. denied*, 516 U.S. 835, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995).

on direct appeal. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544(a)(2), (a)(3); *see generally Commonwealth v. Banks*, 540 Pa. 143, 148, 656 A.2d 467, 469, *cert. denied*, 516 U.S. 835, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995) (stating that an issue is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue"). Further, an appellant cannot obtain collateral review of previously litigated claims by alleging ineffective assistance of prior counsel and presenting new theories of relief. *Commonwealth v. Whitney*, 550 Pa. 618, 629, 708 A.2d 471, 476 (1998)(citing *Commonwealth v. Peterkin*, 538 Pa. 455, 460–61, 649 A.2d 121, 123 (1994), *cert. denied*, 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995)).

In affirming the judgment of sentence on direct appeal, this Court found that trial counsel lacked a reasonable basis for failing to request a no-adverse-inference instruction. The Court, however, declined to accord relief, because Howard failed to identify the manner in which he was prejudiced, and because the Court was unable to discern prejudice from an independent review of the record. *See Howard*, 538 Pa. at 100–01, 645 A.2d at 1308.

While appellate counsel's argument on direct appeal did not emphasize the prejudice prong of the ineffectiveness analysis, the argument that she made certainly included the suggestion that a no-adverse-inference instruction was necessary to prevent the jury from making an impermissible inference. Indeed, in Howard's brief on direct appeal, appellate counsel cited extensively to *Commonwealth v. Lewis*, 528 Pa. 440, 598 A.2d 975 (1991), wherein this Court stated:

The very premise underlying our requirement of the "no-adverse-inference" charge to the jury, under Article I, Section 9, is that the trial judge is vested with an *obligation* to protect the defendant's right to remain silent, free from the insidious danger of adverse inference presented by a jury left free to wander in speculation. Experience teaches us that the very *exercise* of an individual's right not to testify under Article I, Section 9, may *endanger* that right if the jury is left free to draw negative inferences from the

defendant's decision to exercise his or her constitutional privilege. The trial court, being in a unique position to protect a defendant's constitutionally secured right through the jury charge, is the only bulwark to ensure that the exercise of a fundamental right does not turn into an act of constitutional suicide.

*Id.* at 450, 598 A.2d at 980 (emphasis in original). Thus, it is clear that the potential prejudice identified by Howard in his current appeal was raised by Howard's appellate counsel and considered by this Court on direct appeal. It is for this very reason that the Court confirmed its prior holding in *Lewis* that the failure of a trial court to give a "no-adverse-inference" instruction, where timely requested, can never amount to harmless error. *See Howard,* 538 Pa. at 97–98, 645 A.2d at 1306.

 This Court's holding on direct appeal in this case, however, was based upon the fact that, unlike the claim of error in *Lewis,* Howard's claim was presented as a collateral attack on his trial counsel's stewardship. In such circumstances, the burden is not upon the Commonwealth to establish beyond a reasonable doubt that the error did not contribute to the verdict; rather, the burden is upon the appellant to establish actual prejudice.[7] *See Howard,* 538 Pa. at 99–100, 645 A.2d at 1307–08. In the former case, the potential prejudice identified by Howard would suffice to establish reversible error; in the latter case, this Court held that it did not. *See id.* In this appeal, Howard cites nothing from the record that would demonstrate the kind of actual prejudice this Court found lacking in its opinion on direct appeal. Accordingly, the PCRA court properly denied his claim.

In addition to his claims of ineffective assistance of counsel, Howard asserts two claims of error on the part of the PCRA court. First, Howard contends that the PCRA court erred in denying his request for the appointment of a private investiga-

---

7. Actual prejudice in this context is defined as a reasonable probability that, but for the act or omission in question, the result of the proceeding would have been different. *See Crawley,* 541 Pa. at 414, 663 A.2d at 679.

tor to travel to Moultrie, Georgia, to interview members of his family and to gather local school and employment records. Howard cites to the United States Supreme Court's decision in *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), in support of his contention that his claim has a constitutional dimension.

Preliminarily, we note that a petitioner has no federal constitutional right to state collateral review. *See Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987). Thus, the federal constitutional principles associated with trial and direct appeal identified by the United States Supreme Court in *Britt* are not directly applicable in this state post-conviction proceeding. Moreover, Howard has not made any claim under the Pennsylvania Constitution.

Nevertheless, Pennsylvania appellate courts have borrowed from standards applicable to requests for expert or professional assistance made at trial and on direct appeal in assessing similar requests made in post-conviction proceedings. *See, e.g., Commonwealth v. Bell,* 706 A.2d 855, 862 (Pa.Super.1998). Thus, post-conviction courts have been accorded the ability to appoint experts and other professionals to assist an indigent petitioner upon a showing that such assistance is reasonably necessary to the preparation of the petitioner's case. *See id.* Additionally, with respect to requests for necessary assistance made during trial and direct appeal, this Court has particularly emphasized that relief should be accorded to a capital defendant. *See Commonwealth v. Abdul–Salaam,* 544 Pa. 514, 535, 678 A.2d 342, 352 (1996), *cert. denied,* 520 U.S. 1157, 117 S.Ct. 1337, 137 L.Ed.2d 496 (1997). Under any circumstances, however, it is clear that a request for professional assistance need not be granted where the defendant, appellant, or post-conviction petitioner fails to identify a particularized need for such assistance related to a colorable issue presented in his defense, appeal, or petition, or where an adequate alternative to the requested form of professional assistance is available.

284

■■ Here, the purpose of the investigative assistance sought was to provide support for Howard's claim that the strategy pursued by trial counsel in the penalty phase constituted ineffective assistance of counsel. Howard proposed to accomplish this objective by developing alternative forms of potentially mitigating evidence. As previously noted, however, trial counsel will not be deemed ineffective where, as here, the chosen strategy pursued is supported by a reasonable basis. *See Williams*, 537 Pa. at 28, 640 A.2d at 1265. The PCRA court, therefore, did not err in denying Howard's request for assistance in developing alternative strategies that had no demonstrated relevance to his claim of ineffectiveness. *See generally Brown*, 544 Pa. at 425, 676 A.2d at 1187 (finding that the argument that trial counsel should have produced a capital defendant's school records to establish a mitigating circumstance did not support a finding of ineffective assistance).

■■ Finally, Howard contends that the PCRA court erred by refusing to grant an evidentiary hearing on his PCRA petitions, in particular, to consider testimony from Dr. Tepper. Denial of a PCRA petition without a hearing is proper where the issues raised in the petition do not involve disputed issues of material fact. *See* Pa.R.Crim.P. 1507(a); *Banks*, 540 Pa. at 156, 656 A.2d at 473. Here, Howard's proffer as to Dr. Tepper's testimony, in the form of his report, did not create a factual controversy. Accepting Dr. Tepper's report as true, the PCRA court properly determined that Howard was due no relief.

The order of the Court of Common Pleas of Philadelphia County is affirmed.