J-S49016-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| KEVIN EARL LAPE | |
| Appellant | No. 1559 WDA 2016 |

Appeal from the PCRA Order Dated September 16, 2016
In the Court of Common Pleas of Somerset County
Criminal Division at No(s): CP-56-CR-0000612-2013

BEFORE: DUBOW, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.:                   FILED DECEMBER 05, 2017

Appellant, Kevin Earl Lape, appeals from the order dismissing his first petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

On March 25, 2015, a jury convicted Appellant of one count of each of the following five offenses:   involuntary deviate sexual intercourse by forcible compulsion or threat of forcible compulsion; involuntary deviate sexual intercourse with a child under 16; aggravated indecent assault on a child under 16; indecent assault on a child under 16; and corruption of minors.[1]   On July 21, 2015, the trial court sentenced Appellant to an

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3123(a)(1), 3123(a)(7); 3125(a)(8); 3126(a)(8); and 6301(a)(1), respectively.

aggregate term of 10 to 20 years' incarceration.[2] Appellant did not file post-sentence motions or a direct appeal.

On March 28, 2016, Appellant filed a pro se PCRA petition, citing the "improper obstruction by government officials of [his] right to appeal where a meritorious appealable issue existed and was properly preserved in the trial court" pursuant to 42 Pa.C.S. § 9543(a)(2)(iv), and alleging ineffectiveness of trial counsel. The PCRA court appointed counsel for Appellant on March 30, 2016. Counsel filed an amended PCRA petition in which Appellant additionally stated that his trial counsel "withdrew from representation shortly after sentencing and, therefore, would not file an appeal on his behalf." Appellant also averred that he "voiced" to staff at the Somerset County Jail "following his sentencing . . . that he wished to appeal"; that he was provided with an application for the public defender's office but no pen; that by the time he received a pen the 30 day appeal period had passed; and "but for" the delay caused by the staff at the Somerset County Jail, he would have filed a timely appeal in which to assert a weight of the evidence claim. With regard to trial counsel's alleged ineffectiveness and Appellant's weight claim, Appellant stated that he had "a meritorious ground for appeal" because of: his "limited to no opportunity to commit the alleged offenses due to him being away all week as an over the

_____

[2] The trial court additionally found Appellant to be a sexually violent predator pursuant to 42 Pa.C.S. § 9791.

road truck driver and the constant presence of his wife and sons with himself and the alleged victim"; the victim's "absence [and] non-reporting of the alleged incidents in proximity to their alleged occurrences"; and his "continued denial of the incidents, and the total lack of physical/scientific evidence presented by the Commonwealth, among other evidence." The PCRA court held an evidentiary hearing on September 16, 2016. After the hearing, the PCRA court issued an order denying post-conviction relief. Appellant filed a timely appeal on October 13, 2016.

Appellant raises two issues for our review:

1. Whether the lower court erred in dismissing Appellant's claim for post-conviction relief in the form of reinstatement of his appellate rights nunc pro tunc under Section 9543(a)(2)(iv) of the Post-Conviction Collateral Relief Act ("PCRA")?

2. Whether the lower court erred in dismissing Appellant's claim for ineffective assistance of counsel pursuant to Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987)?

Appellant's Brief at 3.

"Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error." Commonwealth v. Wilson, 824 A.2d 331, 333 (Pa. Super.) (en banc), appeal denied, 839 A.2d 352 (Pa. 2003). Further, the law presumes counsel has rendered effective assistance. Commonwealth v. Rivera, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. Id. To satisfy this burden, Appellant must plead and prove by a

preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different." Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003).[3] Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. Commonwealth v. Jones, 811 A.2d 994, 1002 (Pa. 2002).

The PCRA court commenced Appellant's evidentiary hearing by noting that, in addition to reviewing both Appellant's pro se and amended PCRA petitions, it reviewed the entire trial transcript prior to the PCRA hearing. N.T., 9/16/16, at 1. Appellant then testified, as did his trial counsel, Sara Huston, Esquire. The PCRA court accurately cited their testimony in denying Appellant relief. With regard to its denial of Appellant's request to file a direct appeal nunc pro tunc, the PCRA court determined:

> In sum: [Appellant] was aware of his right to appeal and also of the time in which he had to file it; yet he did not file, or attempt to file, a Notice of Appeal to the Superior Court. [Appellant] was provided with the resources to contact the Public Defender's Office in a timely manner, and, furthermore, no evidence was presented of any government obstruction of his appellate rights. For these reasons, we found that [Appellant] had failed to carry his burden of proving that improper obstruction prevented him from pursuing his direct appeal.

_____

[3] Appellant and the PCRA court reference this tripartite test, respectively citing Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987), and Commonwealth v. Weiss, 81 A.2d 767 (Pa. 2013).

PCRA Ct. Op., 1/23/17, at 5. The PCRA court then thoroughly addressed Appellant's ineffectiveness claim, properly citing both legal authorities and the record, in discussing and discounting each of Appellant's allegations of trial counsel's ineffectiveness. See id. at 5-19. The PCRA court concluded:

> Here, notwithstanding other witnesses' testimony for the prosecution and defense, the main evidence essentially boiled down to the victim's word against [Appellant's]. Attorney Huston presented a coherent theory of the case . . . Simply put, the jury chose not to accept the defense theory of the case.

Id. at 18. As the PCRA court's determinations are supported by the record and are free of error, we affirm the order, and adopt the PCRA court's comprehensive and well-reasoned opinion as our own in deciding this appeal. The parties shall attach a copy of the PCRA court's January 23, 2017 opinion when relevant to any future pleadings.

Order affirmed.

Judge Dubow joins the memorandum.

Justice Fitzgerald notes dissent.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/5/2017

- 5 -

CLERK OF COURTS
SOMERSET, PA

2017 JAN 23 PM 3: 36

FILED FOR RECORD

| | | |
|---|---|---|
| COMMONWEALTH | ) | IN THE COURT OF COMMON |
| | ) | PLEAS OF SOMERSET COUNTY, |
| | ) | PENNSYLVANIA |
| v. | ) | |
| | ) | |
| | ) | NO. 612 CRIMINAL 2013 |
| KEVIN EARL LAPE, | ) | |
| | ) | |
| | ) | POST-CONVICTION RELIEF |
| Petitioner/Defendant. | ) | |

## OPINION PURSUANT TO Pa.R.A.P. 1925(a)

This Opinion is issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## I. FACTUAL AND PROCEDURAL HISTORY

On November 15, 2013, an Information was filed charging the defendant, Kevin Earl Lape, with committing involuntary deviate sexual intercourse ("IDSI") by forcible compulsion, 18 Pa. Cons. Stat. § 3123(a)(1); three counts of IDSI, 18 Pa. Cons. Stat. § 3123(a)(7); aggravated indecent assault, 18 Pa. Cons. Stat. § 3125(1); corruption of minors, 18 Pa. Cons. Stat. § 6301(a)(1)(ii); terroristic threats, 18 Pa. Cons. Stat. § 2706(a)(1); and two counts of indecent assault, 18 Pa. Cons. Stat. § 3126(a)(1). These charges arose out of allegations that Defendant had engaged in multiple instances of sexually abusing his biological daughter over the course of five years.

Defendant pleaded not guilty to all charges on July 14, 2014 and again on September 15, 2014. The case proceeded to trial on October 20 and 21, 2014, and resulted in a mistrial, the jurors having indicated that they were deadlocked after approximately six hours of deliberation.

The Assistant District Attorney advised by letter on November 26, 2014 that her office intended to re-try this case and it should therefore remain on the list for trial. Defendant again pleaded not guilty to all charges on December 8, 2014. The case proceeded to trial on March 24 and 25, 2015. The Commonwealth withdrew counts three, four, and nine because they were duplicates of other counts, leaving the following six counts: (1) IDSI by forcible compulsion (§ 3123(a)(1)); (2) IDSI with a child under 16 (§ 3123(a)(7)); (3) indecent assault on a child under 16, defendant at least four years older (§ 3126(a)(8)); (4) aggravated indecent assault on a child under 16, defendant at least four years older (§ 3125(a)(8)); (5) corruption of minors (§ 2706(a)(1)); and (6) terroristic threats (§ 2706(a)(1)).

On March 25, 2015, the jury found Defendant guilty of all charges except the terroristic threats. On July 21, 2015, Defendant was sentenced, *inter alia*, to an aggregate ten to twenty years' incarceration in a State Correctional Institution. A Sexually Violent Predator hearing was also held on July 21, 2015, and this Court found there to be clear and convincing evidence establishing that Defendant is a Sexually Violent Predator.

Defendant filed no direct appeal. He filed a pro se Post-Conviction Relief Act ("PCRA") petition on March 28, 2016, and, having been granted in forma pauperis status, Defendant later filed, through counsel, an Amended Motion for Post-Conviction Relief (September 16, 2016).[1] We held a hearing on Defendant's Petition on September 21, 2016, at which time we dismissed the Petition.

Defendant filed a Notice of Appeal to the Superior Court on October 13, 2016. On October 18, 2016, we issued an Order pursuant to Pa.R.A.P. 1925(b) directing Defendant to file a concise statement of matters complained of on appeal, with which Defendant complied

---

[1] Defense counsel stated at the hearing that the Amended Motion raises all of the same issues as the initial Petition, so our recapitulation is confined to the representations in the Amended Motion and the evidence adduced at the hearing. *See* Hr'g Tr. 1-2, Sep. 16, 2016.

2

on November 4, 2016.

## II. ANALYSIS

Defendant raises two distinct assertions of error on appeal: (1) "the Court erred in dismissing his claim for post-conviction relief in the form of reinstatement of his appellate rights nun[c] pro tunc under Section 9543(a)(2)(iv) of the [PCRA]"; and (2) "the Court erred in dismissing his claim for ineffective assistance of counsel." Statement of Matters Compl. of on Appeal ¶¶ 3(a), (b). The remainder of Defendant's Statement consists of supporting bases for the ineffective assistance of counsel ("IAC") claim.

### A. Reinstatement of Defendant's Appellate Rights Nunc Pro Tunc

Defendant asserts that his trial counsel, Attorney Sara Huston, "withdrew as counsel shortly after sentencing and, therefore, would not file an appeal on his behalf." Def.'s Amen. Mot. ¶ 7, Sep. 16, 2016. During the early days of his incarceration, Defendant allegedly had indicated to staff members in the Somerset County Jail that he wanted to file an appeal, and that he was provided with an application for the public defender's office, but no pen with which to fill out the application. *Id.* at ¶¶ 8-9.

Defendant further alleges that "by the time he was provided a pen by the staff of the Somerset County Jail and he submitted said application...he was informed by the Public Defender's office that 30 days had passed since his sentencing and it was too late to appeal." *Id.* at ¶ 10. Consequently, "but for the delay caused by the staff of the County Jail to provide him with an application to the Public Defender's [O]ffice to appeal his case[,] he would have been able to perfect a timely appeal." *Id.* at ¶ 11.

Defendant's testimony, however, belies these claims. When asked on direct examination when he had asked for the Public Defender's form, he testified, "Uh, Probably

3

that day, next day after…The next day." Hr'g Tr. 5. He received the form four days later. *Id.* This puts Defendant's receipt of the form to request a Public Defender at five days after sentencing. Defendant was asked when he had obtained a pen and was able to fill out the application; his response was: "Uh, it would be two days after I got the application. I asked— finally got a pen. So, it would have been in the second week…that I was there." *Id.* at 6. After he filled out the application, he "handed it back to the CO [corrections officer] for them to send it over to the Public Defender's Office." *Id.* So, Defendant was able to fill out the application within seven or eight days of sentencing, meaning his delay in filing an appeal, which he attributes to not having been provided a pen, or an application, is demonstrably false, by his own testimony. *See also id.* at 9.

Defendant testified that he has "no idea" whether the Public Defender's Office received his application. *Id.* at 6. He admitted on cross-examination that he filled out a post-sentence rights form with his attorney, and that he recalled being told he had thirty days in which to appeal. *Id.* at 8. Though Defendant was restricted from phone use for the first week, *id.* at 9, his use was not restricted thereafter. *Id.* at 10. However, Defendant did not call to ask the Public Defender's Office about appealing because, "I thought the paperwork I sent over, he would come over and talk to me about it." *Id.*

Defendant does not remember to which officer he had turned in the form. *Id.* at 10. After he gave the form to the officer, he remained in Somerset County Jail for "maybe three days" before he was transferred and spent four days in isolation at "Western in Pittsburgh," where he was not permitted to make phone calls or mail letters. *Id.* at 6-7. Defendant spent two weeks in Western. *Id.* at 11. Defendant then did another week to week-and-a-half of isolation in SCI-Camp Hill, and then when he went to his "home block there," he filled out

4

another application to the Public Defender's Office. *Id.* at 7, 11. At this time, the Public Defender informed Defendant that the deadline for filing an appeal had passed and that Defendant needed to file a PCRA petition. *Id.* at 7.

We denied Defendant's request under § 9543(a)(2)(iv) based upon our finding that he failed to prove by a preponderance of the evidence that there was an improper obstruction by a government official or officials. Hr'g Tr. 20. As Defendant admitted in his testimony, he was well aware of the thirty-day appeal period. Moreover, contrary to the representations in his Amended Motion, Defendant was given a pen in time to fill out his application for a Public Defender, but he did not avail himself of the opportunity to call the Public Defender's office to confirm receipt, nor did he file the Notice of Appeal himself to preserve the appeal. Finally, as the Commonwealth has correctly noted, "Simply...filling out the form for the Public Defender did not assure him the Public Defender was going to file the appeal." *Id.* at 19-20.

In sum: Defendant was aware of his right to appeal and also of the time in which he had to file it; yet he did not file, or attempt to file, a Notice of Appeal to the Superior Court. Defendant was provided with the resources to contact the Public Defender's Office in a timely manner, and, furthermore, no evidence was presented of any government obstruction of his appellate rights. For these reasons, we found that Defendant had failed to carry his burden of proving that improper obstruction prevented him from pursuing his direct appeal.

## B. Ineffective Assistance of Counsel

Defendant next alleges IAC based on multiple grounds: (1) Attorney Huston "failed to file an appeal or post-sentence motion," Amen. Mot. ¶¶ 14-16; (2) she failed to "clarify" the Commonwealth's expert's testimony, and also failed to "[e]mphasize [a] [l]ack of [s]cientific

5

[e]vidence," *id.* at ¶¶ 18-29; (3) she "explicitly called [defense witness Katie Luttner] as a lay witness regardless [of] her credentials as a therapist," *id.* at ¶¶ 31-35; (4) she failed to emphasize the "limited opportunity" Defendant had to commit these offenses against his daughter, *id.* at ¶¶ 37-44; and (5) Attorney Huston failed to cross-examine the victim about allegedly inconsistent statements. *Id.* at ¶¶ 46-51.

When ineffective assistance of counsel is raised, a petitioner must prove, pursuant to § 9543(2)(ii), that his conviction or sentence resulted from "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." A successful showing of ineffective assistance of counsel requires the petitioner to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

*Strickland* is a two-part test: "First, the defendant must show that counsel's performance was deficient," which requires "showing that counsel made errors so serious that the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, "the defendant must show that the deficient performance prejudiced the defense," which requires "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In Pennsylvania, the *Strickland* test has been parsed into three distinct elements:

> The petitioner must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Weiss*, 81 A.3d 767, 782 (Pa. 2013). The Pennsylvania Supreme Court has further noted that "both the U.S. Supreme Court and this Court have made clear that a court is

6

not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first." *Id.* at 783 (internal citations omitted).

*Strickland* itself makes clear that "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687-88. *Strickland* also emphasizes that "[j]udicial scrutiny of counsel's performance must be highly deferential...Because of the difficulties inherent in making the evaluation, a court must indulge a **strong presumption** that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotations and citation omitted) (emphasis added). *See also, Thomas v. Varner*, 428 F.3d 491, 499 (3d. Cir. 2005).

We next address each of Defendant's assertions of ineffectiveness.

### 1. Failure to File an Appeal or Post-Sentence Motion

Defendant asserts that "Trial Counsel failed to file an appeal or post sentence motion. If Trial Counsel failed to file said appeal[,] it would constitute per se ineffective assistance of counsel. *Com. v. Lantzy*, 736 A.2d 564, 571 (Pa. 1999)."

Defendant was sentenced on July 21, 2015. His trial attorney, Ms. Huston, submitted a Motion to Withdraw as Counsel on July 23, 2015. In her Motion, Attorney Huston represented, "It was specifically contemplated that if appeal and/or post-sentence matter was at issue, a new fee agreement would have to be reached." Mot. to Withdraw as Counsel ¶ 1, Jul. 23, 2015. She also stated that she had explained to Defendant the deadlines for his post-

7

sentence rights and "outlin[ed] the basic details of the fee agreement," however, "Mr. Lape has not requested any post-sentence relief," which was consequently the reason Attorney Huston sought to withdraw. *Id.* at ¶¶ 4-5. This Court granted Attorney Huston's Motion on July 24, 2015 (Cascio, J.).

Attorney Huston testified, at the PCRA evidentiary hearing, that Defendant had not instructed her to file an appeal. Hr'g Tr. 27, Sept. 16, 2016. Furthermore, Defendant did not ask her to file the appeal on the day of the sentencing, though he did inquire as to the cost. *Id.* Defendant corroborates that he asked Ms. Huston "what it would take to...appeal [his] case," and after she told him she required a $7,000 retainer, he decided to ask for a Public Defender's form to fill out. *Id.* at 5. There was no testimony from Defendant that he asked Attorney Huston to file a Notice of Appeal for him, though he was aware that he had thirty days from the date of sentencing to appeal. *Id.* at 8.

The law on this issue is that "[c]ounsel's unjustified failure to file a direct appeal will constitute prejudice *per se* under [*Commonwealth v. Lantzy*, 736 A.2d 564, 572], if the petitioner can establish that he did ask counsel to file an appeal." *Commonwealth v. Qualls*, 785 A.2d 1007, 1010 (Pa. Super. Ct. 2001) (citing *Commonwealth v. Harmon*, 738 A.2d 1023, 1024 (Pa. Super. Ct. 1999)). Here, there is no question that Defendant was aware of his post-sentence rights. Defendant provided no testimony that he actually asked Attorney Huston to file a Notice of Appeal, or any other post-sentence motions; and there is in fact testimony by Attorney Huston that Defendant did not ask her to file any post-sentence motions nor a Notice of Appeal.

We find the facts in this case to be distinguishable from the facts in cases such as *Qualls*, where the trial counsel admitted that he "disregard[ed] the known and acknowledged

8

fact that his client 'definitely' wanted to file an appeal," 785 A.3d at 1011, and *Lantzy*, where the holding was "[w]here, as here, the defendant, upon the advice of his counsel, forfeits his appellate rights in return for an illusory modification of his sentence, such waiver cannot reasonably deemed valid." 736 A.2d at 572-73. We believe these facts take the case *sub judice* out of the ambit of *Lantzy* and its progeny, leading us to therefore conclude that Attorney Huston was not per se ineffective.

### 2. Failure to Clarify the Commonwealth's Expert's Opinion

During the trial, the prosecution called Dr. Paula Balboni George to testify, Dr. George being the physician who examined the victim. After explaining the protocol for evaluating possible abuse victims, Dr. George testified, "No, there were not" any "physical findings with regards to [the victim]." Trial Tr. 1.52, Mar. 24, 2015. Dr. George was then asked whether that fact was unusual, to which Dr. George replied, "No. I would have been very surprised if I had found anything suggestive of abuse because what she reported would not be likely to leave any medical finding." *Id.*

On cross-examination, Attorney Huston inquired as to the doctor's methodology for determining whether the victim's hymen was "intact," and whether the victim's hymen had suffered any damage, to which Dr. George responded that the hymen was undamaged; and, though sexual intercourse does "[n]ot usually" cause "a lacerated hymen," "[i]t can." *Id.* at 1.54-55. Attorney Huston returned to Dr. George's testimony in her closing, where she stated,

> The doctor told you there were no physical findings, and certainly that's typical in a case like this...but if you listened closely to the doctor, she also indicated that she [the victim] wouldn't have had necessarily lacerations or bruising or redness, even if she would have evaluated her a day or two after an alleged incident.

9

> She said there really wasn't a report of penetration, but what did [the victim] say. She got on the stand and said there was penetration; that when she first told her houseparent she was having this bleeding and pain associated with her menstrual cycle and they inquired why, she said she was raped. Does that jibe with the doctor's understanding of it or her explanation of it yesterday?
>
> Something you have to ask yourself.

Trial Tr. 2.13, Mar. 25, 2015.

We believe there is no arguable merit to this claim. Defendant argues that Attorney Huston's representation was deficient because she "did not call an expert witness to clarify or challenge Dr. George's testimony," nor did she "call an expert witness to illustrate" the point that Dr. George's testimony "actually corroborated Mr. Lape's, that he did not sexually abuse his daughter." Def.'s Amen. Mot. ¶¶ 27-29. Dr. George's testified that there were no physical findings to corroborate the victim's allegations. This lack of physical evidence, Dr. George observed though, is generally consistent with what the victim was alleging. It is obvious, however, that this lack of physical evidence is equally consistent with Defendant's claim that no abuse occurred. We did not believe an expert witness was necessary to establish this point. Moreover, we were unwilling to find that Attorney Huston was ineffective simply because she did not expressly state this common sense conclusion.

We further note that Attorney Huston made use of Dr. George's testimony to impeach the credibility of the victim's testimony, as illustrated *supra*; that is, trial counsel argued that the victim claimed that she had suffered bleeding and pain related to her rape, which is in tension with the doctor's findings that no traces of physical injury were observed. Trial Tr. 2.13. Attorney Huston's strategy was to use Dr. George's testimony not to emphasize the obvious conclusion that no abuse had occurred, but rather to impeach the victim's prior

10

claims. We found nothing unreasonable about pursuing this strategy.

### 3. Calling Ms. Luttner as a Lay Witness

. The defense called Katie Luttner, who had been the victim's therapist, to testify as to her observations of the victim and Defendant outside of her professional capacity. Trial Tr. 1.132. She testified that she had never observed any unusual behavior between Defendant and the victim that would have raised a "red flag with respect to sexual abuse." *Id.* at 1.133. She was briefly cross-examined as to the amount of time she observed the victim and Defendant. *Id.* at 1.133-34.

Defendant now alleges that she should have been called as an expert witness, and a failure to call Ms. Luttner as a witness "affected the outcome of the trial, and there was no strategic reason not to call Ms. Luttner as an expert...." Def.'s Amen. Mot. ¶¶ 34-35. Attorney Huston testified that she believed that a privilege may have applied, limiting Ms. Luttner's ability to testify in her capacity as the victim's therapist; Ms. Huston also expressed doubt that Ms. Luttner could have qualified as an expert. Hr'g Tr. 37. The Assistant District Attorney represented that this Court had ruled in the first trial that Ms. Luttner was not permitted to be qualified as an expert. *Id.* at 39. This is partially correct: at the first trial, Attorney Huston sought to call Ms. Luttner as a witness; the Commonwealth objected, citing the Mental Health Act, and arguing that Ms. Luttner was not permitted to "testify as to anything involving the family in her capacity as a counselor, and she's still a counselor today...." Trial Tr. 1.139, Oct. 20, 2014. This Court permitted Ms. Luttner to be called as a witness provided Ms. Luttner not testify "as to what she did" in her capacity as a counselor. *Id.* at 1.140.

So, while there was not an express ruling that Ms. Luttner could not be qualified as an

11

expert, it is clear from the record that Ms. Luttner was permitted to testify subject to her testimony being limited to observations made outside of her capacity as a therapist. For this reason, we noted at the evidentiary hearing that "that's the law of the case...." Hr'g Tr. 39. While we were under the impression at that time that the specific issue was Ms. Luttner's qualification, the same reasoning applies to the ruling that Ms. Luttner was only permitted to testify in a lay capacity because of privacy concerns related to the Mental Health Act. In any event, this Court's ruling in the first trial made clear the parameters under which Ms. Luttner was permitted to testify, which explains why Attorney Huston only called Ms. Luttner as a lay witness.

Based on this Court's ruling in the prior trial, Attorney Huston had no reason to believe she could call Ms. Luttner to testify as an expert witness, so she cannot be faulted for not attempting to call Ms. Luttner as an expert. For this reason, we submit that there is no arguable merit to this claim and it was properly dismissed.

### 4. Failure to Emphasize Defendant's Limited Opportunity to Commit These Offenses

Defendant next alleges that "if Trial Counsel would have emphasized his lack of opportunity to commit said offenses, and [the victim's] abundance of opportunity to report said offenses, the outcome of the trial would have been different[;] and not emphasizing said evidence had no strategic purpose, thus warranting a finding [of] ineffective assistance of counsel under *Pierce*." Def.'s Amen. Mot. ¶ 44.

At the evidentiary hearing, PCRA counsel asked Ms. Huston whether she made "clear to the Jury that there was a limited opportunity or limited time where Mr. Lape and [the victim] were alone together," and Attorney Huston testified,

12

> I don't necessarily think that was one of my top five points I wanted to stress. Certainly, it was considered, and absolutely the fact that she was at Milton Hershey School was one of the biggest[,] because she had resources to report to and she was away from the home[,] and she returned to the home where she was indicating there was this abuse. So, that was certainly explored at length, the fact that she was away from the home, came back.

Hr'g Tr. 32.

While Attorney Huston elicited testimony about the limited time during which Defendant could have committed this abuse, her articulated strategy was to craft a narrative for the jury in which the dubiousness of the victim's behavior was emphasized. As Attorney Huston argued in her closing, "Guidance counselors, teachers, houseparents. During that period of time from 4th grade until she returned [from Milton Hershey] to the Lapes in 2013, a period of years had passed and again there was no report. Despite her being away from Mr. Lape, not being under his thumb, no report of abuse at that time." Trial Tr. 2.15, Mar. 25, 2015. Attorney Huston's theory of the case was that the victim was a troubled child who "had some behavioral problems by the time she ended up with the Lapes," that "[p]erhaps there was some resentment between her and [her stepmother, Rebecca,] since Rebecca was typically the parent there, the one that was home, not over-the-road, and [the victim] was mad." *Id.* at 2.14, 2.15. It

> certainly would be understandable if [the victim] had some resentment or jealousy of her brothers who lived this life of stability in one home their entire life, that she didn't have…We also heard as an underlying theme…that [the victim] did often seek out attention, again understandably so in light of what she had gone through in her life…it doesn't matter what kind of attention that is…It's attention.

*Id.* at 2.16. It was the defense's theory of the case that the victim made up these allegations of abuse in order to garner more attention for herself, because Defendant had "some problems

with [the victim], he was gone a lot of the time, but he did the best he could. He knew that he was an over-the-road trucker. He had to provide for his family; and when he did that, he was away, which left Rebecca with a lot of the duties." *Id.* at 2.16-2.17.

As the Pennsylvania Supreme Court has stated, "Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interest." *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998). A claim of ineffective assistance generally cannot "succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued." *Id.* Furthermore, a "finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued."

We believe our presentation of Attorney Huston's argument illustrates that she made use of the fact that Defendant was an over-the-road truck driver; that the victim was at a boarding school; and that Defendant's wife Rebecca was the homemaker, all with the aim of explaining the victim's motivation for allegedly making up these allegations. This is a strategy, the aim of which is to undermine the victim's story by explaining why the victim would have concocted these alleged falsehoods, while also arguing that the victim's behavior otherwise does not make any sense, because, for instance, she had ample time to report the abuse while away (for years) from Defendant, yet she failed to do so.

Defendant now alleges that "if Trial Counsel would have emphasized his lack of opportunity to commit said offenses, and [the victim's] abundance of opportunity to report said offenses, the outcome of the trial would have been different…thus warranting a finding of ineffective assistance of counsel…." Def.'s Amen. Mot. ¶ 44. However, Attorney Huston

14

clearly argued at length that the victim had plenty of time to report the abuse, yet failed to; and while counsel chose to use Defendant's regular absence from the household to provide motive for the victim to lie, rather than to reiterate Defendant's "limited opportunity" to abuse the victim, we cannot say that, had Attorney Huston focused more on Defendant's limited opportunity, that the potential for success would have been "substantially greater."

We therefore submit that Attorney Huston had a reasonable strategy which should not be compared in hindsight with alternatives not pursued. For this reason, we found that this basis for Defendant's IAC claim was insufficient.

### 5. Failure to Cross-Examine the Victim Regarding Allegedly Inconsistent Statements

Though the victim claimed to have been abused, she nevertheless still wanted to return home. One of the reasons the victim cited for wanting to return home was that she wanted to live with her brothers again because she "missed them so much," and, as she stated, "I expected that I was 13, if sex was happening, pregnancy could happen, that he wouldn't risk it, that he would leave me alone." Trial Tr. 1.78. *See also* Def.'s Amen. Mot. ¶¶ 46-51. Defendant claims that "Trial Counsel not inquiring into [the Victim's] nonsensical and bizarre response as to why she returned home despite alleged ongoing sexual abuse affected the outcome of the trial and did not serve a strategic purpose." Def.'s Amen. Mot. ¶ 51. Defendant argues, "The fact that a majority of the allegations [the victim] had made and testified to did not involve the type [of] sexual conduct that would result in pregnancy, her answer as to why she thought the sexual abuse would stop and she was safe to return home...should have at the least [been] explored by trial counsel during the cross...or have been mentioned in her closing argument." *Id.*

We firstly observe that the victim testified that Defendant would rub his penis

15

"underneath [her] vaginal area, back and forth," and that it was "on top of the lips of [her] vagina," and that it also went "inside the lips," though "[n]ot very far. It was just usually [a] back and forth motion." Trial Tr. 1.73. There was thus testimony that some vaginal intercourse had occurred.

Attorney Huston was asked at the evidentiary hearing why she "didn't press the matter that [the victim] was coming home because she thought she would be left alone for pregnancy, even though a majority of her allegations were of acts that would not lead to pregnancy...." Hr'g Tr. 34. Ms. Huston responded, "I spent a lot of time deciding strategically what way I would approach the cross-examination of [the victim], and I believed...I would be tactful and rather respectful of her because I thought the Jury would respect that based on...my feeling towards the situation." *Id.* She continued, "So a lot of my cross-examination was limited...not...in the sense that it didn't hit everything substantively, but I didn't feel it was strategically the best decision to come at her very aggressively. I thought I could build a relationship with her where she wasn't afraid to answer the question." *Id.*

We disagree that the victim's statements about pregnancy, which factored into her decision about coming home, are "inconsistent" with her allegations. "Inconsistent" is commonly defined as "not in agreement, harmony, or accord; incompatible...self-contradictory." Webster's New World College Dictionary 723 (4th ed.). As we illustrated *supra*, Defendant sexually abused the victim in various ways, including mild penetration of her vagina, which is entirely consistent with the victim's belief that a pregnancy could arise from this abuse, and that this would disincentivize further abuse. For these reasons, we found that this allegation failed to demonstrate arguable merit (as there were no "inconsistent

16

statements," per se) and Attorney Huston articulated a reasonable strategy for not subjecting the victim to ardent cross on this matter.

We observe that Defendant, in his Statement of Matters Complained of on Appeal, also argues that a "failure to make prompt complaint" jury instruction should have been requested. Def.'s Statement ¶ 3(g). However, our review of the Amended Motion has not uncovered this claim. We notice that there was one question at the evidentiary hearing which was "Do you remember if there was a discussion as to whether or not there would be the prompt complaint Jury instruction given?" to which Attorney Huston testified, "No, I don't believe there was." Hr'g Tr. 26. There was no further development of this issue, such as why Attorney Huston did not make this request.

We believe Defendant insufficiently developed the record on this point. Further, this very fact was at the core of Attorney Huston's strategy, in that she spent a large section of her closing argument devoted to the implausibility of abuse given that the victim had years away from Defendant, while in boarding school, to report the abuse, but did not. We therefore believe that there was no prejudice to Defendant such that the jury instruction would have a reasonable probability of changing the outcome of the trial.

### 6. Cumulative Prejudice

While it is well-settled that "no number of failed claims may collectively warrant relief if they fail to do so individually," when "the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed." *Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011). *See also, Commonwealth v. Simpson*, 112 A.3d 1194, 1205-06 (Pa. 2015).

None of Defendant's claims failed based solely on lack of prejudice, except for the

17

issue of the prompt delay jury instruction. Therefore, there are no other individual claims to aggregate in order to determine cumulative prejudice. Thus, we also disagree that cumulative prejudice warrants a finding of ineffective assistance of counsel.

## III. CONCLUSION

"In criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact, [which] is free to believe all, part, or none of the evidence." *Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. Ct. 2006). And it has long been recognized that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from the defense witnesses," *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. Ct. 2006).

Here, notwithstanding other witnesses' testimony for the prosecution and defense, the main evidence essentially boiled down to the victim's word against the Defendant's. Attorney Huston presented a coherent theory of the case that posited that the victim made these allegations up because she was resentful of the restrictions in the Lape household, the attention her brothers were getting which she felt entitled to, and anger at her father for being absent so often. Simply put, the jury chose not to accept the defense theory of the case.

We are mindful that that it is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," *Strickland*, 466 U.S. at 689. In this case, we resisted the temptation to blame the outcome on ineffective assistance of counsel from Attorney Huston. In our view, Attorney Huston's conduct fell well within the range of

18

reasonable professional assistance.

RESPECTFULLY SUBMITTED:

_____
D. Gregory Geary, P.J.

Dated: January 23, 2017

For the Commonwealth:    Catherine A. Primavera-Zakucia, Esq.
For Defendant:    David T. Leake, Esq.