J. S62037/19

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MONROE WEEKLEY, III, | : | No. 812 WDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order Entered April 29, 2019,
in the Court of Common Pleas of Beaver County
Criminal Division at No. CP-04-CR-0002162-2011

BEFORE:  PANELLA, P.J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          FILED AUGUST 25, 2020

Monroe Weekley, III, appeals from the April 29, 2019 order entered by the Court of Common Pleas of Beaver County denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

The PCRA court provided the following summary of the factual and procedural history:

> The evidence at trial showed that the victim died as a result of being shot in the back of the head with a large caliber weapon.  The deceased victim was found by investigators slumped over a couch with his pants pulled down around his knees.  [Appellant] went to the home of James Stewart and knocked on the door.  Brad Karas, who was inside, let [appellant] in, told him that Stewart was asleep, and that he could wait until Stewart woke up.  When Stewart eventually came downstairs and woke Karas back up, [appellant] spoke to Stewart, admitting that he had shot and

killed [the victim] after a struggle, and that [the victim] had been doing something "foul" when he entered the room. Stewart testified that [appellant] told him that "he caught [the victim] sitting on a chair in the house receiving fellatio from [Alvin] Jay Flowers." Stewart testified that [appellant] told him that [the victim] and [appellant] had previously "pulled a lick," meaning they had committed a robbery together, that [the victim] had taken the $1,200 proceeds from the robbery, and that [the victim] had failed to provide [appellant] his $600 share of the proceeds. Karas testified that [appellant] told him he had killed [the victim] over drugs.

While [appellant] and Stewart were talking, Karas was instructed to clean [appellant's] .44 Magnum Redhawk revolver, which he did. Stewart then took the revolver, left the home with [appellant], and walked to the residence of James Connor, who lived nearby. Stewart sold the firearm to Connor, and gave the proceeds of the sale to [appellant].

Stewart later began to cooperate with investigators. A series of phone calls and text messages were made between Stewart's cell phone and [appellant's]. The incriminating communications from [appellant] indicated, among other things, that [appellant] thought that Karas could not be trusted to keep from talking to the police, that [appellant] did not think Karas would be believed by anyone because he was a drug addict, and that "two womens [sic] word is better than one he [sic] just a [friend]." [Appellant] stated to Stewart over the phone, "No gun no case."

During the investigation, the firearm, which had been left by Connor at his son's residence, was recovered. A bullet and copper jacket were also recovered from the crime scene in a location consistent with the trajectory of the head wound suffered by the victim. Forensic testing confirmed that the bullet found at the scene was fired by the Redhawk revolver.

The jury returned a verdict on August 20, 2012, finding [appellant] guilty of the third degree murder

of [the victim]. The jury also found [appellant] guilty of receiving stolen property and carrying a concealed firearm without a license. On October 3, 2012, [appellant] was sentenced to serve an aggregate period of incarceration of 24½ years to 52 years. The conviction and sentence were affirmed by the Superior Court. Commonwealth v. Weekley, [125 A.3d 447 (Pa.Super. 2015) (unpublished memorandum). The Superior Court affirmed appellant's judgment of sentence on the trial court's opinion.] [Appellant] filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which denied allocatur on December 31, 2015.[1]

On October 5, 2016, [appellant] filed a motion for post conviction collateral relief. [Appellant] was appointed counsel, who, after several extensions, filed an amended [PCRA] petition on June 19, 2017. The [PCRA] court held an evidentiary hearing on the petition on June 8, 2018, and continued the hearing to August 1, 2018 in order to allow the parties an opportunity to locate and test evidence that was collected during the initial investigation of this case. [Appellant] was present for each day of the evidentiary hearing, and was represented by counsel. Counsel for the Commonwealth and the charging officer were also present. On August 1, 2018, the [PCRA] court entered an order scheduling briefs and oral argument, which was held on December 13, 2018.

PCRA court opinion, 4/29/19 at 1-4 (citations, footnotes, and extraneous capitalization omitted; emphasis added).

The PCRA court dismissed appellant's petition on April 29, 2019. Appellant filed a timely notice of appeal on May 24, 2019. The PCRA court did not order appellant to file a concise statement of errors complained of on

---

[1] Commonwealth v. Weekley, 130 A.3d 1290 (Pa. 2015).

appeal pursuant to Pa.R.A.P. 1925(b).  On June 5, 2019, the PCRA court filed

an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

1. Whether prior trial counsel was ineffective when prior trial counsel failed to highlight the lack of forensic testing of the vehicle swabs[?]

2. Whether the Commonwealth inadvertently withheld potentially exculpatory evidence and whether prior trial counsel was ineffective when prior trial counsel failed to highlight the lack of forensic testing of the clothing worn by the initial suspect in the case[?]

3. Whether prior trial counsel was ineffective for failing to fully and adequately cross-examine witnesses with impeachment evidence[?]

4. Whether there was actual prejudice to [appellant] when prior trial counsel failed to adequately present exculpatory information to the jury and adequately cross-examine key witnesses[?]

Appellant's brief at 8.

PCRA petitions are subject to the following standard of review:

"[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error."  Commonwealth v. Dennis, [] 17 A.3d 297, 301 ([Pa.] 2011) (citation omitted).  A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court.  Id., at 305 (citations omitted).  To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence:  (1) his conviction or sentence resulted from one of more of the errors enumerated in 42 Pa.C.S.[A.] § 9543(a)(2); (2) his claims have

> not been previously litigated or waived, id., § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel[,]" id., § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue[.]" Id., § 9544(a)(2). "[A]n issue is waived if [appellant] could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." Id., § 9544(b).

Commonwealth v. Treiber, 121 A.3d 435, 444 (Pa. 2015).

Here, all four of appellant's issues are based on claims of ineffective assistance of counsel. Under the PCRA, an individual is eligible for post-conviction relief if the conviction was the result of "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). When considering whether counsel was ineffective, we are governed by the following standard:

> [C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668 [] (1984). This Court has described the Strickland standard as tripartite by dividing the performance element into two distinct components. Commonwealth v. Pierce, [] 527 A.2d 973, 975 ([Pa.] 1987). Accordingly, to prove counsel ineffective, the petitioner must

> demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. Id. A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.
>
> Commonwealth v. Busanet, [] 54 A.3d 34, 45 ([Pa.] 2012) (citations formatted). Furthermore, "[i]n accord with these well-established criteria for review, [an appellant] must set forth and individually discuss substantively each prong of the [Pierce] test." Commonwealth v. Fitzgerald, 979 A.2d 908, 910 (Pa.Super. 2009).

Commonwealth v. Perzel, 116 A.3d 670, 671-672 (Pa.Super. 2015), order vacated on other grounds, 166 A.3d 1213 (Pa. 2017).

First, appellant contends that trial counsel rendered ineffective assistance by failing to highlight to the jury the lack of forensic testing on the swabs recovered from Tamika Brown's vehicle. (Appellant's brief at 15.) As noted by the PCRA court:

> During the course of the investigation, Alvin Jay Flowers was an initial suspect in the homicide of [the victim]. Flowers was present at the scene the night [the victim] was killed. During the course of the investigation, there were reports that Flowers was in the company of Tamika Brown, that they had driven in Brown's car, and that around the time period that the homicide occurred, Flowers and Brown went to the home of Sheldon Sims. Flowers and Brown showered, and Flowers left some of his wet clothes, which Sims disposed of. Those clothes were recovered from the trash by investigators. Brown's car was later seized by investigators and swabs taken of areas of possible blood inside the car.

PCRA court opinion, 4/29/19 at 5-6 (citations to the record omitted). The PCRA court further noted that the swabs taken from inside Brown's car were not forensically tested by the Commonwealth. (Id. at 6.)

On appeal, appellant specifically argues that the Commonwealth's decision not to have the swabs forensically tested "should have been presented to the jury and it would have raised doubt regarding the case against [appellant]." (Appellant's brief at 17.) Appellant further argues that trial counsel should have initially raised this issue on cross-examination with the Commonwealth's DNA expert, Ashlee Mangan.[2] (Id. at 17-18.)

Appellant's argument is belied by the record. Indeed, during his cross-examination of Detective Timothy Staub[3] at trial, the record reflects that appellant's trial counsel asked about the swabs lifted from Brown's vehicle. (Notes of testimony, 8/13/12 at 161.) Additionally, during his closing argument, appellant's trial counsel highlighted the limited amount of evidence sent to the crime lab for forensic analysis. (Notes of testimony, 8/17/12 at 48.) Accordingly, appellant's claim lacks arguable merit.

Further, appellant has failed to establish that trial counsel's course of action lacked an objective reasonable basis. As noted by the PCRA court, our

---

[2] Ms. Mangan is a forensic scientist at the Greensburg Regional Crime Laboratory. (Notes of testimony, 6/8/18 at 73.)

[3] Detective Staub is employed by the Detectives Bureau of the Beaver County District Attorney's Office. (Notes of testimony, 8/13/12 at 132.)

supreme court in Commonwealth v. Williams, 899 A.2d 1060 (Pa. 2006),

has warned of the potential strategic dangers of DNA evidence:

> A chosen strategy will not be found to have lacked a reasonable basis unless it is proven "that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Commonwealth v. Howard, [], 719 A.2d 233, 237 ([Pa.] 1998).
>
> . . . .
>
> It is easy to say that failing to pursue exculpatory evidence is ineffectiveness, but this presumes the evidence will indeed be exculpatory. If counsel were sure the accused's DNA would not be revealed in any relevant samples from the victim or scene, certainly testing would give exculpatory results and should be sought. However, the client's mere claim of innocence or alibi does not always settle the question; effectiveness of counsel is not dependent on accepting the candor of the client. Testing that shows the DNA matches suddenly makes a conviction-one that might have been avoided or less than certain-a sure thing.
>
> That is, subjecting a client to DNA testing is very likely to settle whether there will be a conviction or not. It can demolish the prosecution's case, but it can cast it in concrete as well. It can eliminate the potential of a "not guilty" verdict based on an alibi, or on reasonable doubt, and the less compelling the Commonwealth's case, the less compelling is the desire for pre-trial DNA testing. Not seeking testing that has the potential to convict a client may be a very reasonable strategy; strategy is not measured through hindsight against alternatives not pursued, so long as trial counsel had a reasonable basis for the decision made. See id.

Id. at 1064.

As further noted by the PCRA court,

> [Appellant] has failed to show proof of any exculpatory value with regard to the swabs. There is no claim and no evidence, that trial counsel, or current counsel, were at any time prohibited from submitting . . . the swabs for forensic testing of their own. Rather, the PCRA proceedings in this case have shown the Commonwealth to be accommodating by locating evidence from years ago, and making it available to [appellant]. Despite this, neither trial counsel, nor current counsel, has ever made a request for those items to be subjected to additional testing.

PCRA court opinion, 4/29/19 at 21-22 (footnote omitted).

Based on our review of the record, we find that the PCRA court's factual conclusions are well based in the record and that its legal conclusions are free of error. Therefore, appellant is not entitled to relief on his first issue.

In his second issue, appellant avers that the Commonwealth inadvertently withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Appellant's brief at 19.) Appellant further contends that trial counsel was ineffective for failing to highlight the lack of forensic testing on the clothing worn by Flowers. (Id.)

Our supreme court has set forth the following test for claims of a Brady violation:

> Due process is offended when the prosecution withholds evidence favorable to the accused where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87, []. "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or

inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82, [] (1999).

Pursuant to Brady and its progeny, the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 [] (1995). However, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795 [] (1972). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 [] (1976).

Instead, "favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles, 514 U.S. at 433 [] (quotation and citation omitted). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 [] (1985). In evaluating whether a reasonable probability of a different outcome has been demonstrated, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 434[]. A defendant thus "need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." Id. at 434-35[]. Rather, a defendant need only show that the favorable evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435[].

Commonwealth v. Natividad, 200 A.3d 11, 25-26 (Pa. 2019).

Specifically, appellant contends that the Commonwealth "inadvertently withheld evidence regarding the clothing found at Sheldon Sims' residence." (Appellant's brief at 21.) We find that appellant has failed to establish that the clothing at issue was withheld by the Commonwealth.

Indeed, as noted by the PCRA court:

> [Appellant's PCRA] counsel conceded at the December 13, 2018 oral argument that the existence and recovery of Flowers' clothing was noted in a police report, and that the police report was turned over to [appellant's] trial counsel in discovery. [(Notes of testimony, 12/13/18 at 4-7.) Appellant's PCRA] counsel further conceded that the blood swabs were logged as evidence on an inventory log which was likewise revealed in discovery to [appellant's] trial counsel. [(Id. at 28.)] The attorney for the Commonwealth similarly asserted, without objection by [appellant's] counsel, that all discovery had been provided, including the entire file for Alvin Flowers' criminal case. [(Id. at 14-15, 21-22.)] Thus, the Commonwealth did not fail to disclose the existence of any items of evidence. The evidence at the PCRA hearing showed that the swabs and clothing were never subjected to any forensic testing prior to trial. Therefore, there was not any forensic testing of the items to disclose, nor is there any proof that conducting forensic testing of those items would result in exculpatory evidence. The requirements of Brady were therefore met in this case.

PCRA court opinion, 4/29/19 at 11.

Based on our review of the record, we find that the PCRA court's conclusions are supported by the record. Accordingly, appellant's Brady issue is without merit.

Within his second issue, appellant further contends that his trial counsel rendered ineffective assistance for failing to inquire as to the whereabouts of the clothing, "and the Commonwealth's failure to seek any form of testing of said evidence." (Appellant's brief at 23.) As discussed above, this claim is belied by the record. (See notes of testimony, 8/17/12 at 48.) Accordingly, appellant's second issue does not entitle him to relief.

Third, appellant argues that trial counsel was ineffective for failing to adequately cross-examine Commonwealth witnesses James Stewart and Bradley Karas. (Appellant's brief at 24-25.)

The PCRA court concluded as follows:

> James Stewart's and Bradley Karas' testimony directly connected [appellant] to the homicide. They not only heard [appellant's] admissions of guilt, they witnessed and participated in his actions to dispose of the evidence. Karas cleaned the murder weapon for [appellant], and Stewart sold it for him. [Appellant] claimed an alibi. He testified that he was not present in Stewart's home that day, and claimed that his phone calls at the time distanced him from any connection to Stewart on that date. It does not appear to the [PCRA c]ourt to be an accident that trial counsel elicited [appellant's] testimony of the phone calls to his brother while omitting testimony regarding [appellant's] phone calls to Stewart. Rather, it appears to the [PCRA c]ourt that any evidence which would have shown that [appellant] had actually called James Stewart during the critical time period when he claimed he was not present at Stewart's residence would have only strengthened the Commonwealth's case, and done considerable damage to [appellant's] alibi. The evidence at the PCRA hearing showed that [appellant] attempted to call both Stewart's landline, and then Stewart's cell phone, one right after the other. [(Notes of testimony, 6/8/18 at 149-150.)] As

the Commonwealth has observed, each phone call's duration was only six seconds, which is consistent with a phone call that is not answered, and a cell phone can clearly call a landline from any location, including while inside the residence where the landline is located. [(]Id. at 138.[)] Rather than having impeachment value, the evidence of [appellant's] attempts to call Stewart are consistent with the Commonwealth's case and the trial testimony that Stewart was asleep upstairs when [appellant] arrived. That evidence would have supported an inference that [appellant] wanted to speak to Stewart and was attempting to wake him. In short, [appellant's] claim does not even have arguable merit because presenting the evidence which [appellant] claims should have [been] presented would have had little, if any, impeachment value, and would likely have only harmed [appellant's] alibi and further corroborated the Commonwealth's case.

PCRA court opinion, 4/29/19 at 33-34.

Based on our review of the record, we find that the PCRA court's conclusions are based in the record and free of legal error. We, therefore, find that appellant is not entitled to relief on his third issue.

In his fourth issue, appellant appears to raise a cumulative prejudice claim. Specifically, appellant contends that "[i]ndividually and cumulatively [the above] claims prejudiced [appellant] and 'but for' . . . trial counsel's omissions, the outcome of the trial could have been different." (Appellant's brief at 34.)

[Our supreme court has] often held that "no number of failed [] claims may collectively warrant relief if they fail to do so individually." [Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009)] (quoting Commonwealth v. Washington, [] 927 A.2d 586, 617 ([Pa.] 2007)). However, [the court has] clarified

> that this principle applies to claims that fail because of lack of merit or arguable merit. [Commonwealth v. Sattazahn, 952 A.2d 640, 671 (Pa. 2008)]. When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may be properly assessed. Id.; Johnson, supra at 532 (citing Commonwealth v. Perry, [] 644 A.2d 705, 709 ([Pa.] 1994), for the principle that a new trial may be awarded due to cumulative prejudice accrued through multiple instances of trial counsel's ineffective representation).

Commonwealth v. Spotz, 18 A.3d 244, 321 (Pa. 2011).

Here, none of appellant's three issues pertaining to ineffective assistance of counsel was disposed of due to a lack of showing of prejudice. Rather, all three issues failed because they lacked arguable merit. Accordingly, appellant's claim of cumulative prejudice from multiple errors is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2020